**The STATE of Texas, Appellant,**

v.

**Nancy M. KOST, Appellee.**

**No. 04–89–00317–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 28, 1990.

Discretionary Review Refused
May 23, 1990.

Brock Huffman, Law Office of Brock Huffman, San Antonio, for appellant.

Fred G. Rodriguez, Carol Wilder and Barbara Hervey, Crim. Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and BIERY and ONION, JJ.

## OPINION

JOHN F. ONION, Jr., Justice (Retired).[1]

This is an appeal by the State from an order granting in part a motion to suppress evidence. *See* TEX. CODE CRIM.PROC. ANN. art. 44.01(a)(5) (Vernon Supp.1990); TEX. CONST.ANN. art. V., § 26 (Vernon Supp.1990). The appellee-defendant seeks to "cross-appeal" the order denying in part the said motion to suppress.

Appellee was charged with driving while intoxicated. TEX.REV.CIV.STAT.ANN. art. 6701*l*–1(b) (Vernon Supp.1990). Both theories of intoxication by introduction of alcohol into the body were alleged. TEX. REV.CIV.STAT.ANN. art. 6701*l*–1(a)(2)(A) and (B) (Vernon Supp.1990).

Appellee filed a motion to suppress evidence obtained as a result of an illegal detention and arrest. Appellee specifically sought to suppress the results of a breath test administered to her. During the evidentiary hearing on the motion a controversy arose over whether the intoxilyzer test had been properly administered in accordance with the law. After the hearing the trial court granted the motion as to the results of the intoxilyzer but otherwise denied the motion to suppress.

The State then appealed the order insofar as it granted the motion to suppress with the district attorney certifying that the appeal was not taken for the purpose of delay and that the evidence suppressed was of substantial importance in the case. *See* article 44.01(a)(5).

On appeal the State urges that the trial court erred and abused its discretion in granting the motion to suppress the results of the intoxilyzer where the State had demonstrated a compliance with the applicable regulations.

TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, § 3 (Vernon Supp.1990) governs the admissibility of evidence of alcohol concentration or presence of a controlled substance or drug as shown by analysis of a person's blood, breath, urine, or any other bodily substances taken at the request or order of a peace officer.

Section 3(c) provides in part:

(c) ... Breath specimens taken at the request or order of a peace officer must be taken and analysis made under such conditions as may be prescribed by the Texas Department of Public Safety, and by such persons as the Texas Department of Public Safety has certified to be qualified.

The Texas Department of Public Safety has accordingly established breath alcohol testing regulations, the applicable portion of which is found in 37 TEX.ADMIN.CODE § 19.3 (West 1989), as follows:

(a) All breath alcohol testing techniques, methods, and programs to be used for evidentiary purposes must have the approval of and be certified by the scientific director.

(b) ...

(c) All breath alcohol testing techniques, in order to be approved, shall meet, but not be limited to the following:

(1) continuous observation of the subject for a minimum period of time as set by the scientific director prior to the collection of the breath specimen, during which time the subject must not have

ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, smoked, or introduced any substances into the mouth; ...

At the suppression hearing Highway Patrolman Mark Spillers, Texas Department of Public Safety, testified that near 1 a.m. on January 30, 1989, he was near the end of his shift and on his way home. An oncoming vehicle from the opposite direction did not dim its headlights as it passed the officer's vehicle. The officer turned around and followed the other vehicle until it entered a private driveway shown to be that of appellant. Spillers related that appellant stumbled as she got out of her car, swayed, had red glossy eyes, an alcoholic breath, and failed two field tests. The officer arrested the appellant and took her to the San Antonio police station where he administered a breath test on the Intoxilyzer 5000, being a certified breath test operator. Spillers explained to the trial court that the Intoxilyzer 5000 required two breath tests which did away with the 15 minute observation period "which was used with the old intoxilyzer (4011)." He related that the first test results was 0.173 and the second test showed a reading of 0.164.

At the conclusion of Spillers' testimony the trial court expressed some concerns about the "regs" of the Department of Public Safety. Spillers assured the court that the "waiting period" was established for the old intoxilyzer but the "5000 ... doesn't have that particular requirement."

In response to the trial court's expressed concerns, the State called George McDougall, Jr., Breath Test Technical Supervisor for Bexar County, who worked under the supervision of the Scientific Director of the Department of Public Safety. McDougall agreed that the provisions of § 19.3(c) [quoted above] had not been changed for some years, but referred to some revision of "5–88" as having "jurisdiction over two different types of instrumentation. The observation changed for those two instruments due to the nature of the test as

performed by each different instrument." The record then reflects:

Q. Let's keep it to the Intoxilyzer 5000.

A. Okay. The 5000, the scientific director said the continuous observation need only be a 15 minute period during which time the operator or the arresting officer can say that this person did not put anything in his mouth, that is, not put a cigarette or gum, did not drink anything during this 15 minute [sic]. It no longer has to be a eyeball to eyeball continuous observation where they would watch for a burp, vomit or anything of that nature. That now can be observed by the instrument itself. But there must be a period of time of 15 minutes during which they have not put anything in their mouth.

Q. Okay. And is this set out by the scientific director, Mr. Brown, as you know it?

A. Yes, it is.

On cross-examination of McDougall the record reflects:

Q. Okay. And you're saying that has been changed to where you don't have to have eyeball to eyeball?

A. That is correct.

Q. So they don't have to sit there and watch him?

A. That is correct.

In response to questions by the Court the record shows:

THE COURT: He's in custody, but the officer says, "I never saw him. He was in the back seat. I didn't keep an eye on him at all. I don't know what he was doing back there."

THE WITNESS: Then he would have to be in handcuffs if he didn't see him.

Telling the court that the observations had to be continuous but not eyeball to eyeball, the witness responded to further interrogations by the court:

Q. THE COURT: You're saying that a transporting officer who isn't even

looking at the individual would comply with whatever waiting period is required right now and that the administrative officer, the operator can go right into it without doing anything more?

THE WITNESS: If that observation period immediately proceeded the beginning of the test, yes.

THE COURT: But your observation period is now—you're saying is now being interpretted [sic] as being custodial, handcuffed?

THE WITNESS: Yes.

Officer Spillers was recalled. He testified the arrest occurred at 12:50 a.m. and estimated it took 20 to 25 minutes to reach the police station. He acknowledged his estimate was vague because after placing the appellee in the car he had contacted her husband at the house because of her expressed concerns for her husband and children. Spillers described the appellee as petite. The record shows she was 4'11" tall and weighed about 83 pounds. When she was first handcuffed the handcuffs fell to the ground. On the trip to the station Officer Spillers observed her bringing her hands from behind her back and placing them in the handcuffs again in front of her. He testified that he administered the warnings at 1:24 a.m. and gave the first test at 1:37 a.m. Earlier when asked if he had seen her eat, drink, or put something in her mouth, he answered, "Not that I noted." After the question of the regulations arose and Spillers was recalled, the record reflects:

Q. During that time [trip to police station until first test] did you have Miss [sic] Kost in continuous observation?

A. She was in my presence.

Q. All right. While she was in your presence, Officer, did she eat anything, smoke anything, ingest anything in her mouth?

A. No.

The State thereinafter argued that the "statute" specifically allowed the scientific director to change the interpretation of the regulations "and he has done so." The trial court questioned the independent authority of the scientific director to vary the regulations adopted by the D.P.S. or change the interpretation of "continuous observation" from machine to machine. The court granted the motion to suppress the results of the intoxilyzer and denied the motion insofar as it claimed an illegal arrest.

Here, we find that the Department of Public Safety, acting pursuant to legislative authorization[2], has adopted certain regulations regarding breath alcohol testing including continuous observation with the period of time for such observation to be set by its scientific director. 37 TEX. ADMIN.CODE § 19.3 at 125–26 (West 1989). The time period has been shown to have been set at 15 minutes. And section 19.3 was last amended to be effective September 8, 1986. 11 Tex.Reg. 3800 (1986). The clear purpose of section 19.3(c) is to ensure continuous observation of the test subject during the 15 minutes immediately preceding the test. *See McGinty v. State,* 740 S.W.2d 475, 476 (Tex.App. Houston [1st Dist.] 1987, pet. ref'd).

■ Where there is no statutory or regulatory definition of a term in a statute or regulation, courts will look to common usage of the term, to its plain and ordinary meaning, unless the statute or regulation clearly indicates the drafter's intent to use the language in some other sense. *Howard v. State,* 690 S.W.2d 252 (Tex.Crim. App.1985); *Scharbrough v. State,* 732 S.W.2d 445 (Tex.App.–Forth Worth 1987, pet. ref'd). *Cf.* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1988).

The term "continuous observation" was not defined by the Texas Department of Public Safety, and it must be given its ordinary and plain meaning.

*Langford v. State,* 532 S.W.2d 91, 95 (Tex.Crim. App.1976).

---

2. Article 6701*l*–5, § 3(b) has been held not to be an unconstitutional delegation of legislative power to the Department of Public Safety.

"Continuous" has been defined as "uninterrupted, unbroken, not intermittent or occasional." BLACK'S LAW DICTIONARY (5th ed. 1979). *See also* B. GARNER, A DICTIONARY OF MODERN LEGAL USAGE (1987).

"Observation" has been defined as an act or the faculty of observing. "Observe" has been defined as "to guard, watch.... to see or sense especially through directed careful analytic attention." WEBSTER'S NEW COLLEGIATE DICTIONARY (1973).

■ Other than the authority to set the time period for the "continuous observation," we find nothing in Chapter 19 of the Administrative Code or elsewhere that delegates to the scientific director the authority to vary the regulations of the Department of Public Safety, and, more particularly, to change the interpretation to be given "continuous observation." Further, no written certificate, directive, memorandum or policy statement of the scientific director was introduced into evidence showing that such action was ever undertaken. The parties in their appellate briefs and oral arguments have not cited us to any such directives, and we have found none. Under the law the "continuous observation" required for any intoxilyzer test is that contained in said section 19.3(c) given its plain and ordinary meaning.

As to the facts, the trial court observed that Officer Spillers was unaware that a "continuous observation" was required when the 5000 intoxilyzer was utilized. The state maintained Spillers' testimony showed a "continuous presence" and there was a full compliance with the law.

■ At a hearing on a motion to suppress evidence the trial judge is the trier of facts, judge of the credibility of the witnesses and the weight to be given to their testimony. He may choose to believe or disbelieve any or all of a witness' testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980); *Walker v. State*, 588 S.W.2d 920 (Tex.Crim.App.1979); *Draper v. State*, 539 S.W.2d 61 (Tex.Crim.App.

1976). *See also Gilmore v. State*, 666 S.W.2d 136, 148 (Tex.App.—Amarillo 1983, pet. ref'd). Appellate challenges to a trial court's determinations of fact or applications of law should be directed to whether the trial court abused its discretion. *Pyles v. State*, 755 S.W.2d 98, 111 (Tex.Crim.App. 1988) *cert. denied,* —— U.S. ——, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *McCoy v. State*, 713 S.W.2d 940 (Tex.Crim.App.1986) *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Reversal will not follow unless there is an abuse of discretion. *See Nubine v. State*, 721 S.W.2d 430 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). We find no abuse of discretion.

■ Turning to appellee's cross-appeal, we observe that the appellee gave no notice of appeal. In her appellate brief, appellee, after responding to the State's contention, seeks review of a "cross point." She urges the trial court erred in finding her arrest was based on probable cause, and in denying the motion to suppress in part. She attempts to brief the arrest question but does not set forth a jurisdictional statement or argue her right to "cross-appeal" under TEX. CODE CRIM.PROC.ANN., art. 44.01. *See* and *cf.* TEX.R.APP.P. 74(f).

We find nothing in article 44.01 which entitles a defendant in a criminal case to an interlocutory appeal merely because the state appeals under such statute, or any law which grants this court the jurisdiction to entertain this particular appeal by the defendant-appellee.

Article 44.01(j) provides in part:

Nothing in this article is to interfere with the defendant's right to appeal under the procedures of Article 44.02 of this code ...

*See also* Texas Rules of Appellate Procedure.

Any right to appeal by a defendant or review of the ruling denying a motion to suppress is governed by provisions other than article 44.01.

The order granting the motion to suppress the results of the intoxilyzer is af-

firmed and for lack of jurisdiction the "cross-appeal" is dismissed.