The STATE of Texas, Appellant

v.

William REED, Appellee.

No. 04–93–00711–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 19, 1994.

Barbara Hervey, Asst. Crim. Dist. Atty., San Antonio, for appellant.

Ed Bartolomei, San Antonio, for appellee.

Before RICKHOFF, LOPEZ and JOHN F. ONION,[1] Jr., JJ.

## OPINION

ONION, Justice (Assigned).

The State appeals the trial court's order granting appellee's motion to suppress the results of an intoxilyzer test. Appellee is charged by complaint and information with the misdemeanor offense of driving while

---

**1.** Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex.Gov't

Code Ann. § 74.003(b) (Vernon 1988).

intoxicated. In two points of error, the State contends that the trial court erred in granting appellee's motion to suppress evidence of the results of the intoxilyzer test (1) where the State complied with the applicable regulations and (2) the trial court misconstrued the applicable regulations.

Appellee, William V. Reed, was found guilty of the offense charged by a jury, which assessed his punishment at thirty days in the county jail and a fine of $350.00. Thereafter, the trial court suspended the imposition of the sentence and placed appellee on probation subject to certain conditions.

Appellee then filed a timely motion for new trial. This motion alleged that prior to trial appellee had filed a motion to suppress the results of the intoxilyzer test, but that the trial court reserved its ruling on the motion and "carried" it along with the trial. Appellee further alleged that the arresting officer and operator of the intoxilyzer did not observe appellee for the "continuous observation period" as required by law during which time the subject must not have ingested alcoholic beverages or fluids, regurgitated, vomited, eaten, smoked, or introduced any substances into the mouth. Appellee claimed a violation of "Section 19.3(c)(1) 37 TEX.AD-MIN.CODE (West 1989)," and submitted that the trial court abused its discretion "in not granting the Defendant's motion to suppress."

The pre-trial suppression motion had sought the exclusion of the test results on the basis that the State could not show: (1) the use of properly compounded reference samples; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine; and (3) proof of the result of the test by the witness or witnesses qualified to translate and interpret such result so as to eliminate hearsay. The suppression motion was not based on the absence of any observation period by the operator of the intoxilyzer.

▅▅▅▅ A motion to suppress is nothing more than a specialized objection. *Galitz v.*

*State,* 617 S.W.2d 949, 952 n. 10 (Tex.Crim. App.1981); *Mayfield v. State,* 800 S.W.2d 932, 935 (Tex.App.—San Antonio 1990, no pet.). Article 28.01, which allows the trial court to set any criminal case for a pretrial hearing, is not a mandatory statute but one directed to the trial court's discretion. TEX. CODE CRIM.PROC.ANN. art. 28.01 (Vernon 1989); *Calloway v. State,* 743 S.W.2d 645, 649 (Tex.Crim.App.1988); *Montalvo v. State,* 846 S.W.2d 133, 137 (Tex.App.—Austin 1993, no pet.). The question of whether to hold a hearing on a motion to suppress evidence rests within the discretion of the trial court. It may elect to determine the merits of the suppression motion only during the trial when and if the defendant has lodged a proper objection. *Calloway,* 743 S.W.2d at 649. Even if the defendant specifically requests a pretrial hearing, no error is presented if the court declines to hear the matter. *Id.* If the trial court declines to hear a pretrial motion to suppress, it is incumbent upon a defendant to properly object at trial and obtain an adverse ruling in order to preserve any error. TEX.R.APP.P. 52(a).

In his motion for a new trial, appellee claimed that the trial court had abused its discretion in not granting the pretrial motion to suppress evidence because of the officer-operator's later trial testimony about the "observation period" prior to the intoxilyzer test. The observation period was not the basis of the suppression motion [2] and appellee's new trial motion cited and relied upon a regulation as to observation [37 TEX.AD-MIN.CODE § 19.3(c)(1) (West 1989)] which had been amended and was no longer in effect at the time of the offense, arrest, intoxilyzer test, or trial. The trial court, however, granted the motion for new trial. The State did not appeal. *See* TEX.CODE CRIM.PROC. ANN. art. 44.01(b) (Vernon Supp.1994).

Subsequently, the case was recalled. The trial court announced that it was permitting appellee to have all motions "carried from their [sic] past trial to today." The trial court added: "Today we're going to hear a

---

**2.** The statement of facts of the jury trial is not in the appellate record. We do not know whether appellant lodged an objection at trial on the same basis urged in his new trial motion. *See*

*Gifford v. State,* 793 S.W.2d 48, 49 (Tex.App.—Dallas 1990), *pet. dism'd,* 810 S.W.2d 225 (Tex. Crim.App.1991).

motion to suppress the intoxilyzer based upon the observation. That's what I'm going to limit it to today." No new motion to suppress evidence had been filed and the former motion had made no mention of any "observation period." At the conclusion of the suppression hearing, the trial court granted the motion to suppress evidence.

■■■ In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App.1993) (en banc); *Gibbs v. State,* 819 S.W.2d 821, 830 (Tex.Crim.App.1991), *cert. denied,* 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992). The trial court may accept or reject any or all of the witnesses' testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990) (en banc); *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Crim.App.1980); *Sandoval v. State,* 860 S.W.2d 255, 257 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). In reviewing the trial court's decision, an appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's findings. *Romero,* 800 S.W.2d at 543. If the fact findings are supported by the record, an appellate court is not at liberty to disturb the findings absent an abuse of discretion. *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App.1991) (en banc); *Romero,* 800 S.W.2d at 543; *Dancy v. State,* 728 S.W.2d 772, 777 (Tex.Crim.App.) (en banc), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987). On appellate review, the court will normally address only the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Vargas v. State,* 852 S.W.2d 43, 44 (Tex.App.—El Paso 1993, no pet.).

Article 6701*l*-5, section 3 of the Texas Revised Civil Statutes governs the admissibility of evidence of alcohol concentration or presence of a controlled substance as shown by analysis of a person's blood, breath, urine or other bodily substances, taken at the request or order of a peace officer. TEX.REV.CIV. STAT.ANN. art. 6701*l*-5, § 3(a) (Vernon Supp. 1994).

Section 3(c) of the statute provides in part:

Breath specimens taken at the request or order of a peace officer must be taken and analysis made under such conditions as may be prescribed by the Texas Department of Public Safety, and by such persons as the Texas Department of Public Safety has certified to be qualified.

TEX.REV.CIV.STAT.ANN. art. 6701*l*-5, § 3(c) (Vernon Supp.1994).

Under this delegation of authority, the Texas Department of Public Safety (D.P.S.) has from time to time adopted, amended, and repealed breath alcohol testing regulations. One set of regulations now repealed but quoted in often-cited cases and pertinent to our present discussion can be found in the Texas Administrative Code. 37 TEX.AD-MIN.CODE § 19.3 (West 1989); *see also* 11 Tex.Reg. 3800 (1986).

This version of section 19.3 adopted in 1986 (now repealed) provided in part:

(a) All breath alcohol testing techniques, methods, and programs to be used for evidentiary purposes must have the approval of and be certified by the scientific director.

. . . .

(c) All breath alcohol testing techniques, in order to be approved, shall meet, but not be limited to the following:

(1) continuous observation of the subject for a minimum period of time as set by the scientific director prior to the collection of the breath specimen, during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, smoked, or introduced any substances into the mouth. . . .

Under this regulation, before the intoxilyzer results could be considered by the trier of fact, if the issue of compliance was raised, the State had to prove that a defendant was continuously observed for a minimum period of fifteen minutes [set by the scientific director] immediately preceding the administration of the test so as to ensure that nothing was introduced into the defendant's mouth that may have affected the test's accuracy. *Gifford v. State,* 793 S.W.2d at 49; *State v. Kost,* 785 S.W.2d 936, 939 (Tex.

App.—San Antonio 1990, pet. ref'd); *McGinty v. State,* 740 S.W.2d 475, 476 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

The term "continuous observation," not having been defined in the regulation by the Texas Department of Public Safety, had to be given its ordinary and plain meaning. *Kost,* 785 S.W.2d at 939. In *Kost,* this court stated:

> "Continuous" has been defined as "uninterrupted, unbroken, not intermittent or occasional." BLACK'S LAW DICTIONARY (5th ed. 1979). *See also* B. GARNER, A DICTIONARY OF MODERN LEGAL USAGE (1987).

> "Observation" has been defined as an act or the faculty of observing. "Observe" has been defined as "to guard, watch.... to see or sense especially through directed careful analytic attention." WEBSTER'S NEW COLLEGIATE DICTIONARY (1973).

> Other than the authority to set the time period for the "continuous observation," we find nothing in Chapter 19 of the Administrative Code or elsewhere that delegates to the scientific director the authority to vary the regulations of the Department of Public Safety, and, more particularly, to change the interpretation to be given "continuous observation." Further, no written certificate, directive, memorandum or policy statement of the scientific director was introduced into evidence showing that such action was ever undertaken. The parties in their appellate briefs and oral arguments have not cited us to any such directives, and we have found none. Under the law the "continuous observation" required for any intoxilyzer test is that contained in said section 19.3(c) given its plain and ordinary meaning.

*Id.* at 940.

In *Kost* the intoxilyzer results were held inadmissible because the police officer failed to continually observe the defendant for a fifteen-minute period prior to the breath alcohol testing as required by the regulation. The officer in *Kost* was unaware that a "continuous observation" was required when the new 5000 intoxilyzer was utilized. The State argued unsuccessfully that the evidence did show a "continuous presence" although not a "continuous observation." Other courts have

recognized the holding in *Kost. See Hawkins v. State,* 865 S.W.2d 97, 100 (Tex.App.—Corpus Christi 1993, pet. ref'd); *Callahan v. State,* 814 S.W.2d 420, 422 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Erdman v. State,* 796 S.W.2d 243, 246 (Tex.App.—Houston [14th Dist.] 1990), *reversed on other grounds,* 861 S.W.2d 890 (Tex.Crim.App. 1993); *Gifford,* 793 S.W.2d at 49.

Since the time of the *Kost* decision, section 19.3 (Breath Alcohol Testing Regulations) has been amended by the Texas Department of Public Safety. *See* 37 TEX.ADMIN.CODE § 19.3 (West 1994), effective November 30, 1990. Section 19.3 now reads in part:

> (c) All breath alcohol testing techniques, in order to be approved [by scientific director], shall meet, but not be limited to, the following:

> (1) a period during which the operator is required to remain in the presence of the subject;

> ....

> (i) Subsection (c)(1) of this section requires an operator to remain in the presence of the subject. An operator shall remain in the presence of the subject at least 15 minutes before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth. *Direct observation is no longer necessary to ensure the validity or accuracy of the test result.*

37 TEX.ADMIN.CODE § 19.3(c)(1), (i) (emphasis added).

The Department of Public Safety's commentary to the 1990 amendment of section 19.3 provides in part:

> *Adoption of these amendments is necessary for clarification in the state courts as to the interpretation of these regulations* concerning contested cases of driving while intoxicated, other statutorily related cases, and compliance with legislative changes. Section 19.3 is adopted with *changes* by amending subsection (c)(1) and subsection (i) *relating to subject observation period.*

> *The adoption of these amendments include[s] deleting and adding language due to changes in instrumentation* and statutory changes.

. . . .

The department agrees with comments received and adopts § 19.3 with changes concerning the subject observation period. 15 Tex.Reg. 6602 (1990) (emphasis added).

■ While the commentary uses the term "subject observation period," the current version of section 19.3(i) makes clear that direct observation is no longer necessary to ensure the validity or accuracy of the test result. The operator is required to remain in "the presence of the subject" for at least fifteen minutes prior to the test and exercise reasonable care to ensure that the subject does not place any substances in the mouth. The language in the body of section 19.3 controls over any terminology used in the commentary. The word "presence" as used in section 19.3 has not been administratively or legislatively defined, so it must be given its ordinary and plain meaning. *See Howard v. State,* 690 S.W.2d 252, 254 (Tex.Crim.App. 1985) (en banc); *Kost,* 785 S.W.2d at 939. "Presence" has been defined as an

[a]ct, fact, or state of being in a certain place and not elsewhere, or within sight or call, at hand, or in some place that is being thought of. The existence of a person in a particular place at a given time particularly with reference to some act done there and then. Besides actual presence, the law recognizes *constructive* presence, which latter may be predicated of a person who, though not on the very spot, was near enough to be accounted present by the law, or who was actively cooperating with another who was actually present.

BLACK'S LAW DICTIONARY 1183 (6th ed. 1990); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986) (adding "the state of being in front of or in the same place as someone or something").

■ With this background, we turn to the facts developed at the suppression hearing, which the trial court limited to the "observation period." San Antonio Police Officer John Muzny testified that at 12:25 a.m. on December 31, 1991, he arrested appellee for driving while intoxicated and, after the field sobriety testing was completed, handcuffed appellee and placed him in the rear seat of the police car. When the wrecker picked up appellee's car, appellee was transported to the police station, the trip consuming some twelve to fourteen minutes. There, Muzny read the statutory warnings to appellee at 1:28 a.m., and appellee consented to the intoxilyzer test. Muzny, a certified operator, commenced the first test on the Intoxilyzer 5000 machine at 1:32 a.m., a little over an hour after the arrest. Officer Muzny testified that appellee was in his "continuous presence" the entire time from arrest until the two tests on the intoxilyzer were completed; that he did not see appellee burp, regurgitate, or vomit; that he did not see appellee put anything in his mouth; and that appellee was handcuffed until the time of the test. Muzny admitted that he drove the police vehicle to the police station, but he kept an eye on appellee in the rear seat by virtue of the rear view mirror, and he could detect any movement in the back seat by the handcuffed appellee.

Office Muzny explained to the trial court that the current regulations had changed the observation period "from a cat watching a bird to constant presence"; that the principal purpose now was to prevent a subject from putting anything in his mouth to blow into the intoxilyzer and harm the instrument; and that the dual testing, the two breath tests on the Intoxilyzer 5000 machine, had eliminated the "belch" theory. Muzny added that if a subject vomited, he, as an operator, would commence another fifteen-minute waiting period.

George McDougall, Jr., Breath Test Technical Supervisor for Bexar County, was the second and last witness at the suppression hearing. The parties stipulated that McDougall was an expert on intoxilyzers. McDougall stated that there are two breath tests given on the Intoxilyzer 5000, two minutes apart. The two tests are given to ensure that both breath tests are of the same general value, and, if there is a difference in the tests of anything "greater than 0.020," the entire test is invalidated. He explained that the current D.P.S. regulations have been in effect since December 1990, and that the word "burp" had been eliminated from the new regulations because the alcohol concentration caused by a "burp" would disappear

within two minutes and would affect the test to a great extent by putting "it beyond the .02 range" and invalidating the test. McDougall added that the continuous observation period is no longer required as under the former regulations, but that now only a "15–minute waiting period" is mandated, with the requirement that the operator be in the presence of the subject and take reasonable care to ensure the subject does not place any substance in the mouth.

McDougall told the trial court that with the former instrumentation (Intoxilyzer 4011 ASA) there was only one test (one blow into the machine for the collection of breath), and, to ensure the accuracy of that test under the former regulations, there was a 15–minute continuous observation to see that no burping, regurgitating or vomiting, etc., occurred. McDougall explained that this procedure had been abrogated.

At the conclusion of the suppression hearing, the trial court announced that the former D.P.S. regulations were clear and that new 1990 regulations (section 19.3) were unclear. The trial court interpreted the "reasonable care" provision of the latter regulations as still requiring "continuous observation" despite the fact that section 19.3 expressly provides that direct observation is not necessary. The trial court speculated that appellee might have regurgitated while handcuffed and riding in the rear seat of the police vehicle and that Officer Muzny, driving the vehicle, might not have observed the same.[3] The trial court then stated that the "ruling is Motion to Suppress *based on the observation* is granted."

The trial court conducted a hearing on appellee's motion to suppress evidence while under the impression that the motion was based on the lack of a proper "observation period" prior to the intoxilyzer test. The suppression motion (a specialized objection) was not so based. Even if it could be validly argued that the suppression hearing was

proper, the trial court misinterpreted the applicable law. It is clear that under section 19.3(c)(1) and (i) that a continuous or direct observation of the subject prior to the test is no longer required. The trial court attempted to use the term "reasonable care" to give a tortuous interpretation to section 19.3, eliminating the unambiguous language that no direct observation is required and reinstating, in effect, the former law or regulation. We disagree with the trial court's interpretation of section 19.3 and conclude that the trial court fell into error.[4] Both points of error are sustained.

The suppression order is reversed and the cause is remanded to the trial court.

---

3. Appellant's two tests on the Intoxilyzer 5000 were shown to be "0.155 and 0.153." Thus, the test was in excess of the 0.10 maximum provided by law. *See* Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5, § 3(j)(4)(B) (Vernon Supp.1994).

4. This court has recently reversed two suppression orders from this same trial court concerning interpretations of alcohol breath testing regulations. *See State v. Moya*, 877 S.W.2d 504 (Tex. App.—San Antonio, 1994); *State v. Melendes*, 877 S.W.2d 502 (Tex.App.—San Antonio, 1994).