**Opinion issued November 29, 2012.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-11-00821-CR**

———————————

**PEGGY MCINTYRE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 11**
**Harris County, Texas**
**Trial Court Case No. 1713900**

---

**MEMORANDUM OPINION**

Appellant, Peggy Mcintyre, was found guilty by a jury of driving while intoxicated, and the trial court assessed punishment, which it then suspended, placing appellant under community supervision for one year. On appeal, appellant

contends that trial court erred in denying her motion to suppress because: 1) she was subject to an illegal arrest when she was handcuffed and put in the back of a squad car prior to performing field sobriety tests; 2) she was not read her *Miranda* rights; and 3) the operator of the alcohol breath test was not in appellant's presence for the complete 15 minutes prior to administering the test as is required by DPS regulations. We affirm.

## BACKGROUND

On the night of October 17, 2010, appellant arrived at the Rileys' home and asked to put something that belonged to appellant's boyfriend, whom the Rileys knew, in their garage. Brannon Riley refused appellant's request and repeatedly asked appellant to leave his home. After appellant did not heed Riley's request to leave, she began raising her voice towards them, after which Brannon Riley called the police to report the incident (the first of a number of calls Riley made to the police). *Id.* An altercation ensued between appellant and the Rileys' friend, Miles Kirkes, who was present throughout the whole ordeal. Kirkes believed appellant was "impaired." Her speech was slurred and she was "wobbly." After the encounter with the Rileys became physical, appellant got into her car and sped away. Kirkes saw appellant speed through two stop signs and then heard a loud crash. Kirkes got in his car and drove a short distance, when he saw that appellant

2

had crashed into a brick mailbox and light pole. The owner of the house in front of which the crash occurred saw appellant get out of the vehicle and walk to a nearby house.

Deputy Carsten was dispatched to the scene of the accident where, upon arriving, he was directed to the house that appellant was seen walking to after the crash. When Carsten approached appellant and began to speak to her about the accident, appellant told Carsten that she was the driver of the vehicle involved in the accident. As they spoke, Carsten smelled alcohol coming from appellant.

At that point, Carsten suspected appellant of driving while intoxicated (DWI). He did not perform field sobriety tests immediately because he knew that another officer who was more proficient at conducting field sobriety tests had responded to the disturbance call at the Rileys' home, and would arrive at the scene of the accident shortly. Until the other officer arrived, Carsten placed appellant in handcuffs and put her in the back of his squad car as a safety precaution because she was being verbally combative and had abruptly left the scene of both a disturbance and an accident.

Approximately ten minutes later, Deputy Klosterman arrived at the accident scene. Klosterman removed appellant from the vehicle and noticed the smell of alcohol when he began speaking to her. Klosterman also saw that appellant's eyes

were red and watery, and appellant admitted to Klosterman that she had been drinking. *Id.* Klosterman then administered the horizontal gaze nystagmus test, which appellant performed poorly. Klosterman was unable to perform the other field sobriety tests because there were distractions in the area and appellant had become increasingly uncooperative. Instead, Klosterman handcuffed appellant and transported her to the police station, where he requested Deputy Albers from the DWI Task Force to meet him.

When Deputy Albers made contact with appellant at the station, he detected an odor of alcohol emitting from appellant's breath and noted appellant's bloodshot eyes. Albers conducted the standardized field sobriety tests on appellant, including the horizontal gaze nystagmus test, walk-and-turn test, and the one-leg-stand test. Appellant performed poorly on all three tests, which indicated to Albers that appellant was intoxicated. Appellant then submitted to a breath test using an intoxilyzer. Before administering the test, Albers stepped into an adjacent room with the door open and was approximately five feet away from appellant at all times. Albers testified that appellant did not regurgitate, burp, or put anything in her mouth when she was in his presence. Appellant blew at a blood alcohol level of .10.

4

At trial appellant filed a motion to suppress, which the trial court denied. This appeal followed.

## STANDARD OF REVIEW

We review a ruling on a motion to suppress evidence for abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). When reviewing a trial court's decision to deny a motion to suppress, an appellate court "should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). An appellate court "should afford the same amount of deference to trial court's rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id.* (internal citation omitted). Finally, an appellate court may conduct a de novo review where the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor. *Id.* Moreover, when a trial court does not enter any fact findings when denying a defendant's motion to suppress, an appellate court must view the evidence "in the light most favorable to the trial court's ruling" and "assume that the trial court

made implicit findings of fact that support its ruling as long as those findings are supported by the record." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

## ILLEGAL ARREST?

In the first issue on appeal, appellant contends she was subject to an illegal arrest, and, subsequently, the evidence brought against her should not be admissible as fruits of the illegal arrest.

### *Arrest or Dentention?*

Appellant contends that she was illegally arrested when she was handcuffed and placed into the back of the police car before any field sobriety tests were conducted. The State argues that nothing more than an investigative detention occurred. Whether a detention is an investigative detention or an arrest depends upon the facts and circumstances surrounding the detention. *Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991); *Hoag v. State*, 728 S.W.2d 375, 378–79 (Tex. Crim. App. 1987); *Hilla v. State*, 832 S.W.2d 773, 778 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). The reasonable use of handcuffs or the ordering of a suspect to lie down alone does not convert an investigative detention into an arrest. Handcuffing alone will not necessarily convert a temporary detention into an arrest. *See Rhodes v. State*, 945 S.W.2d 115, 117–18 (Tex. Crim. App. 1997);

*Burkes v. State*, 830 S.W.2d 922, 924 (Tex. Crim. App. 1991); *Hilla*, 832 S.W.2d at 778. Whether an officer believes a suspect is detained or arrested, is not determinative of the issue. *Amores*, 816 S.W.2d at 412; *Hoag*, 728 S.W.2d at 378; *Hilla*, 832 S.W.2d at 778. Rather, we look to the reasonableness of the officer's actions, which is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. *Rhodes*, 945 S.W.2d at 118. "Furthermore, allowances must be made for the fact that officers must often make quick decisions under tense, uncertain and rapidly changing circumstances." *Id.* Police may use such force as is reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety. *Id.* at 117. An investigative detention implies that the obtrusive act is for the purpose of actually investigating. *Burkes*, 830 S.W.2d at 925. Thus, where no investigation is undertaken, the detention cannot be considered investigatory and rises to the level of an arrest. *Id.*

Contrary to appellant's contention that Carsten did not express a concern for his safety, Carsten testified that he smelled alcohol and that appellant was being "verbally combative" during their encounter. He stated that he placed appellant in handcuffs for his and appellant's safety because she had just left the scene of a disturbance at the Rileys' home and a car accident. Appellant was detained for no

more than 10 minutes before another officer arrived to conduct field sobriety tests. Under these circumstances, the trial court could have reasonably concluded that the seizure of appellant and placing her in handcuffs was not an arrest, but rather was a temporary detention for purposes of conducting an investigation as soon as back up deputies arrived to perform the field sobriety tests. *See Goldberg v. State*, 95 S.W.3d 345, 360 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that placing defendant in handcuffs, putting him in back of patrol car, and awaiting homicide officers to conduct murder investigation was not arrest).

### *Reasonable Suspicion for Investigatory Detention?*

Having decided that appellant was the subject of an investigatory detention, not an arrest, we must next decide whether the detention was based upon reasonable suspicion. A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884–85 (1968). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A temporary detention is justified when the detaining officer has specific, articulable facts at the time of the detention which, taken together with rational inferences

from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* A reasonable suspicion means more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). A detention is not permissible unless the circumstances objectively support a reasonable suspicion of criminal activity. *Id.*

Citing *Domingo v. State*, 82 S.W.3d 617 (Tex. App.—Amarillo 2002, no pet.), appellant argues that the odor of alcohol alone is not sufficient to establish reasonable suspicion. However, Carsten did not rely solely on the odor of alcohol to establish reasonable suspicion in this case. Carsten also had information that a homeowner had called to report an accident and had indicated that the driver was possibly intoxicated. Cartsten verified that appellant was the driver who had been involved in the one-car accident. Appellant was unpleasant and agitated. Appellant had also been seen leaving the scene of the accident. These factors gave Carsten sufficient reasonable suspicion to detain appellant in order to determine whether she had been driving while intoxicated. *See Tex. Dep't of Public Safety v. Latimer*, 939 S.W.2d 240, 244 (Tex. App.—Austin 1997, no writ) (holding that defendant's involvement in car accident along with odor of alcohol provided sufficient reasonable suspicion to detain for DWI investigation).

We overrule point of error one.

## MIRANDA RIGHTS AND CUSTODIAL STATEMENTS

In her next point of error, appellant contends any custodial statements made after Carsten handcuffed her and placed her in the car to wait for another officer should not be admitted in accordance with *Miranda* and Texas Code of Criminal Procedure. *See Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S. Ct. 1602, 1612 (1966); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). Protections against self-incrimination afforded by *Miranda* and article 38.22 apply only to custodial interrogations. *Dowthitt v. State*, 931 S.W. 2d 244, 263 (Tex. Crim. App. 1996); TEX. CODE CRIM. PROC. ANN. art. 38.22, §5 (Vernon 2005).

In point of error one, we determined that appellant was detained, not arrested, when Carsten placed her in the back of the patrol car to wait for another officer to arrive and conduct the DWI investigation. While an investigative detention is considered a "seizure," it is characterized by lesser restraint than an arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 438–40, 104 S. Ct. 3138, 3149–3151 (1984); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996) (stating that an investigative detention is a seizure). Persons temporarily detained for the purposes of an investigation are not "in custody" for the purposes of *Miranda*, and the right to *Miranda* warnings is not triggered during an investigative detention. *See Berkemer*, 468 U.S. at 438–40; *Arthur v. State*, 216

S.W.3d 50, 56, 58 (Tex. App.—Fort Worth 2007, no pet.) (citing *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)); *see also Hernandez v. State*, 107 S.W.3d 41, 47–48 (Tex. App.—San Antonio 2003, pet. ref'd) (concluding that appellant's statement that he had consumed nine beers was made during investigatory detention—prior to full custodial arrest—and therefore *Miranda* warnings were not required).

Because appellant's statements at the scene of the accident were made during an investigatory detention, she was not entitled to *Miranda* or article 38.22 warnings.

We overrule point of error two.

## ALCOHOL BREATH TEST

Finally, in point of error three, appellant asserts that the trial court abused its discretion in allowing the results of the breath alcohol test to be admitted into evidence. Specifically, appellant contends that 1) the State failed to establish that appellant was in Deputy Albers' presence for the required 15-minute period prior to the breath test, and 2) the trial court improperly limited her voir dire of the technical supervisor prior to denying the motion to suppress, which impermissibly reduced the State's burden of proving the reliability of the breath test conducted on appellant.

11

### Officer in Appellant's Presence for 15 Minutes before Test?

Appellant argues that the breath test should have been suppressed because "Officer Albers testified that he walked out of the testing room, breaking his line of sight with the Appellant for a few minutes." The State contends that although Albers left the room, he was in appellant's "presence" because he was in an adjacent room, the door was open, and he was approximately 5 feet away from appellant at the time.

The Texas Administrative Code provides that "[A breath test] operator shall remain in the presence of the subject at least 15 minutes before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth. Direct observation is not necessary to ensure the validity or accuracy of the test result[.]" 37 TEX. ADMIN. CODE § 19.4(c)(1) (2012). The term "presence" as used in section 19.4 has not been administratively or legislatively defined; therefore, it must be given its ordinary and plain meaning. *State v. Reed*, 888 S.W.2d 117, 122 (Tex. App.—San Antonio 1994, no pet.). The *Reed* court defined "presence" as an

> [a]ct, fact, or state of being in a certain place and not elsewhere, or within sight or call, at hand, or in some place that is being thought of. The existence of a person in a particular place at a given time particularly with reference to some act done there and then. Besides actual presence, the law recognizes *constructive* presence, which latter may be predicated of a person who, though not on the very spot, was

12

near enough to be accounted present by the law, or who was actively cooperating with another who was actually present.

*Id.* (citing BLACK'S LAW DICTIONARY 1183 (6th ed. 1990) and WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986)).

Where there is a fact issue raised with respect to the 15-minute waiting period requirement, a defendant is entitled to an instruction that the jury disregard the test if it believes or has a reasonable doubt as to whether the fifteen-minute observation requirement was complied with. *See Adams v. State*, 67 S.W.3d 450, 453 (Tex. App.—Fort Worth 2002, pet. ref'd); *Atkinson v. State*, 871 S.W.2d 252, 256 (Tex. App.—Fort Worth 1994), *rev'd on other grounds,* 923 S.W.2d 21 (Tex. Crim. App. 1996). Article 38.23 authorizes the trial court to submit the question of exclusion to the jury when a fact issue arises concerning the legality of obtaining the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005); *Atkinson,* 923 S.W.2d at 23.

In reliance on *Atkinson,* 923 S.W.2d at 25, and as authorized by article 38.23 of the Code of Criminal Procedure, the trial court in this case resolved appellant's motion to suppress the intoxilyzer-test results by concluding the evidence at the hearing presented a fact issue. Thus, the jury was given the final decision, by the trial court's including in its charge an instruction that the jury was to disregard the test results on determining they were obtained without complying with the

13

requirement of 15 minutes of continuous presence under section 19.3(c)(1) of title 37 of the Administrative Code.

The jury resolved the fact issue against appellant and in favor of the State, and its determination of the issue is supported by the evidence. Although Albers stepped into an adjacent room during the 15-minute period, he was not more than five feet away from appellant, and the door between the two rooms was left open. Albers also testified that appellant never belched, vomited, or put anything in her mouth. The law does not require continual observation, 37 TEX. ADMIN. CODE 19.4(c)(1) (2012), and the jury could have rationally concluded that Albers was in appellant's presence, as that term is defined in *Reed*, for 15 minutes prior to the test. *Reed*, 888 S.W.2d at 122.

### *Refusal to Allow Adequate Voir Dire of State's Expert*

Appellant also claims that the trial court erred by refusing to allow her to question the technical supervisor, Dr. Wong, regarding whether Albers had complied with DPS rules by remaining in appellant's "presence" during the 15-minute waiting period, and that such a ruling impermissibly reduced the State's burden of proof. The State contends that appellant did not preserve error on this issue. We agree with the State.

To prevail on a matter on appeal, an appellant must generally preserve error in the trial court. *See* TEX. R. APP. P. 33.1(a). The party must present to the trial court a timely request, objection, or motion that states the grounds for the desired ruling if they are not apparent from the context of the request objection or motion. *Id.*; *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). Additionally, the trial court must rule on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2).

Because appellant did not make a timely objection, we overrule appellant's third point of error.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).