**Tommy Ray BURKES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 801–90.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 20, 1991.

John W. Tunnell, Kilgore, for appellant.

David Brabham, Dist. Atty., C. Patrice Savage, Asst. Dist. Atty., Longview, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

A jury convicted appellant, Burkes, on his not guilty plea of the offense of cocaine possession in an amount less than twenty-eight (28) grams. Punishment was assessed at eleven years confinement in the Texas Department of Corrections[1] and a $5,500 fine. We granted review to consider whether handcuffing a person and placing him upon the ground constitutes an arrest.

On the night of February 20, 1988, the dispatcher of the Longview police department received an anonymous phone call relating information that a pit-bulldog with drugs taped to its belly could be found at an area of the city known as "The Front". "The Front", a two block long stretch of Martin Luther King boulevard in Longview, is comprised of nightclubs and run-down buildings and is notorious as an area in which illegal drugs are sold and used. The information had been received by the dispatcher during the evening shift and was passed on at the start of the night shift to Officer Danny Butler. Butler and three other officers proceeded to "The Front" to investigate the call.

Before arriving at the scene, Butler and his fellow officers discussed their plan of investigation; past experience had taught the police that the arrival of a marked squad car at the front of "The Front" would sometimes prompt drug-carrying individuals to rapidly depart out the rear. Anticipating just such an occurrence on this night, Butler and fellow officer Wilson positioned themselves on opposing corners of a dark field that abutted the rear of "The Front"'s buildings. Upon the arrival of a squad car in front of the clubs, several persons ran from the back of the buildings. Burkes was one of these persons.

Officer Butler, observing the exodus, walked up a trail that led through the field and encountered Burkes as he ran down it. Butler shined his flashlight in Burkes' face and told him to lie down on the ground. He immediately complied, was handcuffed and patted down. The pat down revealed a plastic snuff can which Butler removed from a breast pocket of Burkes' jacket on the (correct) assumption that it contained the rock variety of cocaine. Butler confiscated the drug and placed Burkes in Officer Wilson's custody, then rejoined the chase of the other individuals. The situation having been stabilized, Butler then returned to where Wilson was detaining Burkes and he proceeded to do "... a thorough pat down of him, which produced a pistol that was in his lower righthand jacket pocket." Burkes was then, formally, arrested.

On direct appeal, Burkes challenged the conviction raising three "grounds of error" [sic], namely: (1) that the evidence obtained by the State was the product of an unlawful search without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (2) that the evidence was the product of an unlawful search without probable cause in violation of Article I, § 9 of the Texas Constitution; and (3) that the evidence was the product of an illegal arrest and was, therefore, excludable under Art. 38.23, V.A.C.C.P. The Court of Appeals, considering points one and two in combination, characterized the stop of appellant as a Terry v. Ohio[2] investigative/limited weapons search type stop, overruled all points and affirmed the conviction in an unpublished per curiam decision. *Burkes v. State*, No. 12–88–00304–CR (Tex.App.—Tyler, delivered May 31, 1990).

In its opinion, the court reasoned that:

[b]oth federal and state law authorize the stopping of an individual for the purpose of investigation together with a limited search for weapons under circumstances

---

1. Now the Texas Department of Criminal Justice, Institutional Division.

2. *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968).

which would not justify an arrest[3][,] [citations omitted]

and that:

> ... the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger[4]. [citations omitted]

*Id.* at 3–4. The court found that, in light of the facts presented in the record, the arresting officer was authorized to stop and frisk Burkes "... under both federal and state constitutions[ ]", thus "[a]ppellant's first two points of error [were] overruled."[5] *Id.* at 5.

Subsequently, Burkes filed a motion for rehearing. He raised six grounds for rehearing alleging two basic arguments based upon his original three points of error, to-wit: that the Court of Appeals erred in holding that the "stop" of appellant was a temporary detention as opposed to an arrest; and that the Court of Appeals erred in holding that a temporary detention of appellant was justified. Quoting this court's opinion in *Brown v. State*, 657 S.W.2d 797 (Tex.Crim.App.1983), the Court of Appeals, in a published per curiam opinion, interpreted the Texas and United States Constitutions as though synthesized[6]. *Burkes v. State*, 831 S.W.2d 6 (Tex.App.—Tyler, 1990). The court noted that "[they could] find no Texas cases on point ..."[7] and cited a variety of federal authority in support of the proposition that "... the reasonable use of handcuffs or the ordering of a suspect to lie down does not convert a *Terry* stop into an arrest." *Id.* (emphasis in original). The court of ap-

peals did not analyze the issue under Art. 15.22, V.A.C.C.P. We granted this petition to review its interpretation of the Fourth Amendment, and to review the issue in light of Texas statutory law.

Since granting review in this cause, we have decided the case of *Amores v. State*, 816 S.W.2d 407 (Tex.Crim.App.1991), in which, under the facts of that case, we held that handcuffing and placing a suspect on the ground amounted to an arrest and not a mere *Terry* stop. In *Amores*, the defendant, a black male, was observed in a predominantly white apartment complex removing a box from the open trunk of his car. 816 S.W.2d at 409–10. The apartment manager called the Dallas police and reported the incident, which she believed to be a burglary in process; no other details were then conveyed. *Id.* at 409.

Acting on a report from a dispatcher's "... radio call [regarding] a 'burglary in progress' at the Square Apartments involving a 'black male' ...", an officer proceeded to the complex where he witnessed the defendant (who had by now changed cars) beginning to drive away. *Id.* at 409–10. The officer then:

> ... blocked the Oldsmobile with his patrol car, got out of the car, pulled out his revolver and ordered appellant out of his car.

*Id.* The defendant hesitated in complying, but, once out of his car, was ordered at gunpoint to lie face down on the ground with his hands behind his back and was patted down. *Id.* at 410. Nothing was produced in the pat down, but the officer proceeded to investigate within the defen-

---

**3.** *Brem v. State*, 571 S.W.2d 314, 318 (Tex.Crim. App.1978); *Adams v. State*, 552 S.W.2d 812 (Tex. Crim.App.1977).

**4.** *Perez v. State*, 548 S.W.2d 47, 49 (Tex.Crim. App.1977) (quoting *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883, now known generally as a "*Terry* stop").

**5.** Because the court of appeals determined that the pat-down was an investigative stop and not an arrest, it found that the evidence was not the fruit of an illegal arrest. *Burkes*, No. 12–88 (Tex.App.—Tyler, 1990).

**6.** In the interim, the holding in *Brown* has been modified by our opinion in *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991) which recognized that the protections afforded by our state constitution will not necessarily be interpreted in lock-step with the interpretation given its Federal counterpart. It should be noted, however, that, at the time of its opinion in this cause, the Court of Appeals was without the benefit of that decision.

**7.** The Court of Appeals does, however, note that the First Court of Appeals in Houston has confronted a similar issue in *Pickens v. State*, 712 S.W.2d 560 (Tex.App.—Houston [1st Dist.],

dant's car. *Id.* At some point, the defendant was handcuffed[8] and directed to remain upon the ground.

In deciding in *Amores* that the initial detention was in fact an arrest, we observed that "[a]n arrest occurs when a person's liberty of movement is restricted or restrained." *Id.* at 411, citing *Hoag v. State,* 728 S.W.2d 375, 379 (Tex.Crim.App. 1987); *Brewster v. State,* 606 S.W.2d 325 (Tex.Crim.App.1980); and *Hardinge v. State,* 500 S.W.2d 870 (Tex.Crim.App.1973); *See also* Tex.Crim.Proc.Code Ann. Art. 15.22 (Vernon 1990). It is well settled in Fourth Amendment law that absent a warrant or some functional equivalent giving probable cause[9] to arrest, only a limited, investigatory detention of an individual will be allowed. Additionally, an investigative detention implies that the obtrusive act is for the purpose of actually investigating. Thus, where no investigation is undertaken the detention cannot be considered investigatory and rises to the level of an arrest. *Id.* at 412.

The arresting officer in *Amores*

... blocked the appellant's car in the parking lot, drew his service revolver, ordered the appellant from his car at gunpoint, ordered him to lie face-down on the pavement with his hands behind his back, and told him he would be shot if he did not obey these orders.

*Id.* at 411. Furthermore, no questioning of appellant ever occurred. *Id.* at 412. As the purpose of stopping an individual under suspicious circumstances is to determine (by questioning) if illegal activity is taking place, the intrusive behavior of the police in *Amores* could not be seen as consistent with mere investigation. Therefore, the detention was an arrest rather than a *Terry* stop. *Id.*

In the present cause, the arresting officer's testimony is quite revealing. His testimony reveals that Burkes was under arrest from the moment he was handcuffed:

TUNNELL: Officer, at the time you handcuffed the Defendant, he was under arrest?

BUTLER: Well, at the time I handcuffed Mr. Burkes was to [sic] get him under control.

TUNNELL: Well, was he under arrest? Was he free to leave?

BUTLER: No, sir, he wasn't.

TUNNELL: Was he under arrest?

BUTLER: Yes, sir.

TUNNELL: Did you have a warrant?

BUTLER: No, sir, I did not.

\*     \*     \*     \*     \*     \*

Although the arresting officer's opinion as to whether a person is under arrest is only a *factor* to be considered in determining if an arrest has actually occurred[10], it must certainly be considered persuasive when the arresting officer *admits* that a suspect was under arrest. As mentioned, *supra,* "[a] person is arrested when he has been actually placed under restraint or taken into custody...." *See* Tex.Crim.Proc. Code Ann. Art. 15.22 (Vernon 1990). Here, the record reflects that Officer Butler shined his flashlight in Burkes' eyes, commanded him to lie on the ground, rolled him over and placed handcuffs on him. Further, Burkes was not questioned as to why he was running across the darkened field; instead, he was immediately handcuffed and searched. Officer Butler, at that point, considered Burkes under arrest, and he was not free to leave. Any investigative questioning that occurred was undertaken *after* Burkes was handcuffed. Thus, we find the facts of this case call for the same conclusion we reached in *Amores.*

Accordingly, we hold that, in this case, handcuffing the appellant and placing him on the ground constituted an arrest, and not a mere detention, under Art. 15.22 V.A.C.C.P. As such, we sustain appellant's first Ground for Review, and remand this cause to the court of appeals for a determination of probable cause and fur-

---

1986, pet. ref'd), and resolved it in favor of an arrest.

8. The record was ambiguous as to when the handcuffing took place, but this had no bearing on the outcome of the case. *See Amores* at 410, n. 3.

9. The Texas Legislature has codified these warrant exceptions. *See,* Tex.Crim.Proc.Code Ann. Arts. 14.01–14.04 (Vernon 1990).

10. *See Hoag v. State,* 728 S.W.2d at 378–79.

ther proceedings, not inconsistent with this opinion, which the court of appeals deems appropriate.

CAMPBELL and WHITE, JJ., concur in the result.

McCORMICK, P.J., dissents.