TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00366-CR






Kevin Hartman, Appellant


v.


The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY

NO. 619188, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING





O P I N I O N




 Appellant Kevin Hartman was charged with the offense of driving while intoxicated
(DWI). See Tex. Pen. Code Ann. § 49.04 (West 2003). The county court at law denied appellant's
motion to suppress his statements to the police and his field sobriety tests. Appellant pled no contest
to the charge and was convicted and sentenced, and appeals the pretrial order denying his motion to
suppress. We will affirm. 


FACTUAL AND PROCEDURAL BACKGROUND


 In the early morning hours of August 17, 2002, Austin Police Officer Russell Smith,
who was running stationary radar in the 9200 block of Manchaca Road, stopped appellant for
speeding. The offense report lists the time as 12:18 a.m. and records appellant's speed as 45 miles
per hour in a 45 mph zone. Officer Smith testified that the report contained a typographical error
and that appellant was actually driving 57 mph in a 45 mph zone. When Officer Smith pulled
appellant's car over, appellant was polite and cooperative and provided his license information. 
Officer Smith observed that appellant had difficulty locating his license and fumbled with it, was
thick-tongued and slurred his speech, and had a strong odor of alcohol on his breath. Appellant
admitted to having consumed several drinks. Officer Smith did not determine that there was
probable cause to arrest appellant and did not issue a speeding ticket at that time.

 Despite his suspicions that appellant was intoxicated, Officer Smith did not
immediately administer field sobriety tests; instead, he called Corporal Cost to the scene, because
Cost was Smith's backup officer, and because Corporal Cost had a video camera in his car while
Officer Smith did not. It is the Austin Police Department's recommended procedure to call for a
backup officer and to videotape field sobriety tests. While awaiting Corporal Cost, Officer Smith
asked appellant to remain in his vehicle. Appellant did not ask whether he was free to go, nor did
he drive away. Officer Smith testified that, had the appellant left, he would not have attempted to
pursue appellant to take him into custody, but would have reported him as "evading." Corporal Cost
arrived in five to fifteen minutes, after which Officer Smith administered three standardized field
sobriety tests, concluded that appellant was intoxicated, and arrested him for driving while
intoxicated.

 After a hearing in which the arresting officer testified, the court denied appellant's
motion to suppress appellant's statements and any testimony regarding field sobriety tests. Appellant
submitted a letter brief with attached cases seeking reconsideration, and the state replied; the county
court reaffirmed the ruling denying the motion to suppress. Appellant then pled guilty, preserving
the right to appeal the ruling on the motion to suppress. The county court at law found him guilty
and sentenced him to ninety days in jail, suspended with community supervision for eighteen
months, and a $1200 fine.

 Appellant raises one point of error: that the trial court erred in denying his motion
to suppress all evidence gathered after the traffic stop allegedly became an illegal arrest.


STANDARD OF REVIEW


 In reviewing a ruling on a motion to suppress evidence, the appellate court will
usually have facts established by the trial court, to which the law must be applied. State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000). Because the trial court is the sole trier of fact, but the
appeals court must determine the law, the trial court's ruling on a motion to suppress will be
reviewed using a bifurcated standard. Id. at 855-56. In this review, we give almost total deference
to the trial court's determination of the facts but review the court's application of search and seizure
law de novo. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Here, the county court at law did not make explicit
findings of fact, so we review the evidence in the light most favorable to the trial court's ruling and
assume that the trial court made implicit findings of fact supported by the record. Balentine v. State,
71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing Carmouche v. State, 10 S.W.3d 323, 327-28
(Tex. Crim. App. 2000)). 


DISCUSSION


 Appellant's sole point of error on appeal concerns the legality of the five- to fifteen-
minute detention following the initial stop. Appellant does not contend that Officer Smith lacked
reasonable suspicion to detain, nor that the initial stop was unlawful. Instead, he claims that the
investigative detention of five to fifteen minutes was unreasonable because Officer Smith did not
conduct any investigation during the time he waited for Corporal Cost and the video equipment. He
urges that this unreasonableness transformed the lawful detention into an illegal warrantless arrest
without probable cause, and therefore the county court at law erred by overruling appellant's motion
to suppress.

 The State responds that the five- to fifteen-minute detention was reasonable because
it was necessary to effectuate law enforcement purposes and because it intruded only minimally on
appellant's liberty interests. Because the detention did not amount to an illegal arrest, the State
asserts, the county court at law properly declined to exclude evidence gathered in association with
it.

 An investigative detention in which the subject is not free to leave is a seizure for
purposes of the Fourth Amendment to the United States Constitution and article I, section 9 of the
Texas Constitution. Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Detentions
during traffic stops constitute seizures and must be reasonable. Whren v. United States, 517 U.S.
806, 809 (1996); Delaware v. Prouse, 440 U.S. 648, 653-654 (1979). The United States Supreme
Court has adopted a dual inquiry to determine the reasonableness of an investigative detention: (1)
whether the officer's action was justified at its inception; and (2) whether it was reasonably related
in scope to the circumstances that justified the interference in the first place. Terry v. Ohio, 392 U.S.
1, 19-20 (1968). Texas applies the Terry inquiry and follows this line of federal precedent. See, e.g.,
Carmouche, 10 S.W.3d at 327-28 (applying Terry inquiry); Davis v. State, 947 S.W.2d 240, 242
(Tex. Crim. App. 1997) (holding that Terry applies in Texas); Rhodes v. State, 945 S.W.2d 115, 117
(Tex. Crim. App. 1997) (finding no reason to employ different inquiry under Texas Constitution). 
Because appellant admits that the officer's action was justified at its inception, we are only
concerned with whether it was reasonably related in scope to the circumstances which justified the
interference in the first place. A stop that was justified at its inception may become unreasonable
if it does not satisfy the second part of the inquiry. Davis, 947 S.W.2d at 243. Appellant claims that
this stop became unreasonable at some point during the five to fifteen minutes. 

 Texas courts recognize certain factors in judging the reasonableness of an
investigative detention. An investigative detention must be reasonably related in scope to the
circumstances that originally justified the interference. Id. at 244. It must be temporary and last no
longer than necessary to effectuate the purposes of the stop. Florida v. Royer, 460 U.S. 491, 500
(1983); Davis, 947 S.W.2d at 245. The investigative methods employed should be the least intrusive
means reasonably available to verify or dispel the officer's suspicion in a short period of time. 
Davis, 947 S.W.2d at 245. An investigative detention requires an actual investigation; where no
investigation is undertaken, the detention cannot be considered investigatory and rises to the level
of an arrest. Burkes v. State, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991); see Josey v. State, 981
S.W.2d 831, 839 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd) (listing foregoing as
"parameters that define the reasonableness of an investigative detention").

 Appellant's argument concerns the temporal duration of the traffic stop. Although
the length of the detention may render a Terry stop unreasonable, there is no rigid bright-line time
limitation. United States v. Sharpe, 470 U.S. 675, 685-86 (1985). Instead, common sense and
ordinary human experience must govern over rigid criteria. Id. at 685. The reasonableness of the
detention depends on whether the police diligently pursued a means of investigation that was likely
to dispel or confirm their suspicions quickly, during which time it was necessary to detain the
defendant. Id.; Balentine, 71 S.W.3d at 770-71. Appellant concludes that, because Officer Smith
did not perform field sobriety tests alone and without the aid of a video camera while they waited
for the arrival of Corporal Cost, Officer Smith did not diligently pursue a means of investigation
likely to quickly dispel or confirm his suspicions. (1) Given such conditions, appellant argues, a
detention of even a five-minute duration is unreasonable and becomes an illegal arrest.

 The State responds by pointing out that, while the brevity of the invasion of the
individual's interests is an important factor, courts "have emphasized the need to consider the law
enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate
those purposes." Sharpe, 470 U.S. at 685. Reasonable purposes include investigation, maintenance
of the status quo, and officer safety, considering the totality of the circumstances. Rhodes v. State,
945 S.W.2d 115, 117 (Tex. Crim. App. 1997); see also Josey, 981 S.W.2d at 841 ("Safety and
security reasons may justify moving a suspect from one location to another during an investigatory
stop."). Here, Officer Smith gave the following purposes for the detention: to investigate and collect
evidence of a possible DWI, to secure the scene, to comply with department procedure, and for
officer safety. Corporal Cost brought a video camera, which enabled Officer Smith to gather
objective evidence during the field sobriety tests. (2) Waiting for five to fifteen minutes was reasonable
because it was necessary to effectuate these law enforcement purposes. (3) We conclude that the
investigative detention in this case was reasonable and did not evolve into an illegal, warrantless
arrest.

 Appellant argues that it is always unreasonable for an officer who has the training and
ability to collect evidence to detain a citizen while waiting for aid. Appellant emphasizes that
Officer Smith was fully qualified to conduct field sobriety tests and contrasts this with Sharpe, which
involved DEA Agent Cooke and a highway patrolman, Thrasher. Cooke and Thrasher apprehended
Sharpe and Savage (who were traveling together in two vehicles) separately, because Savage initially
refused to pull his truck over, though Sharpe had immediately complied. Sharpe, 470 U.S. at 678-79. Savage's twenty-minute detention, including time spent waiting for officers to arrive on the two
scenes, was not unreasonable because the officers pursued their investigation diligently and without
illegitimate unnecessary delay. Id. at 687. In a footnote, the court remarks that it was appropriate
for Officer Thrasher to detain Savage pending Agent Cooke's arrival because Thrasher lacked
Cooke's training and experience in narcotics investigation. Id. at 687 n.5. However, what the case
holds is that a twenty-minute detention is not per se unreasonable where police diligently pursue an
investigation, not that waiting for backup is only permissible when investigation would otherwise
be utterly impossible. Id. at 687-88. See Balentine, 71 S.W.3d at 771 (holding investigative
detention of thirty to sixty minutes reasonable because questioning lasted no longer than necessary
and officer employed no dilatory tactics); Josey, 981 S.W.2d at 841 (permitting ninety-minute
detention involving taking vehicle and suspect to another locale for drug dog investigation because
"the officers did not continue to hold appellant after all legitimate components of the investigative
detention had been completed"); cf. United States v. Place, 462 U.S. 696, 709 (1983) (holding
ninety-minute delay in bringing drug dog to airport when officers had advance notice of time and
place of suspect's arrival was not diligent pursuit of investigation).

 Although it is possible that Officer Smith could have conducted unrecorded field
sobriety tests on his own, the key inquiry is not whether a less intrusive alternative was available to
law enforcement officials, but whether the police acted unreasonably in failing to choose that
alternative. Sharpe, 470 U.S. at 687 (quoting Cady v. Dombrowski, 413 U.S. 433, 437 (1973)). It
was reasonable for Officer Smith to call for backup and to use a video camera to add a degree of
certainty to the otherwise highly subjective field sobriety tests performed, even though this
necessitated a short wait. Officer Smith followed police department procedure and was not dilatory
in his investigation. See Id. It is important to allow authorities to graduate their responses to the
demands of a particular situation. Place, 462 U.S. at 709 n.10.

 Because the detention was reasonable and did not exceed its proper scope, it did not
rise to the level of an illegal arrest. We hold that the county court at law did not err in denying
appellant's motion to suppress evidence obtained as a result of the investigatory detention. 
Therefore, we overrule appellant's point of error.


CONCLUSION


 Appellant's point of error is overruled. We affirm the judgment of the county court
at law.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed: April 29, 2004

Publish

1. Appellant also asserts that the seizure could not have been an investigative detention under
Burkes v. State, 830 S.W.2d 922 (Tex. Crim. App. 1991), because Officer Smith did not investigate. 
However, Burkes concerned a situation in which no investigation was undertaken, and in which the
defendant was never questioned, but taken immediately into custody by being handcuffed on the
ground. Id. at 925. This case, in contrast, does not involve a situation in which no investigation was
undertaken, but one in which the participants awaited another officer's arrival in order to facilitate
the investigation. 
2. The existence of a videotaped record will often benefit DWI defendants, many of whom
would prefer to let the judge or jury see the tests first hand instead of relying on an officer's
observations. By waiting for Corporal Cost, Officer Smith preserved this possibility. 
3. The Texas Court of Criminal Appeals interprets the language from Florida v. Royer, 460
U.S. 491, 500 (1983), "an investigative detention must be no longer than is necessary to effectuate
the purpose of the stop," to mean that once the reason for the stop has been satisfied, police may not
"fish" for evidence of other unrelated criminal activity. Davis v. State, 947 S.W.2d 240, 243 (Tex.
Crim. App. 1997). In Davis, the original stop was for a DWI investigation, but after the officers
satisfied themselves that the driver was not intoxicated, they detained the driver and passenger until
a drug dog could arrive to sniff the car. Id. at 242. "The purpose of the investigative detention was
effectuated when the officers determined appellant was not intoxicated." Id. at 245. Here, the
purpose of the investigative detention was effectuated when Officer Smith determined that Appellant
was intoxicated and arrested him.