Guadalupe GARZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–04–00101–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 16, 2005.

Michael C. Gross, Law Office of Michael C. Gross, San Antonio, for appellant.

Mary Beth Welsh, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Guadalupe Garza appeals from his murder conviction and asserts that the trial court erred in denying his motion to suppress two written statements he made to the police after his arrest. We affirm the trial court's judgment.

### BACKGROUND

On September 10, 2002, Adam Stallknecht made arrangements through Guadalupe Garza to purchase ten pounds of marijuana. Garza and Stallknecht agreed to meet in the parking lot of a strip club near Stallknecht's apartment to complete the drug deal. Garza arrived at the arranged location in a vehicle with at least two other individuals.[1] Paul Ayala was driving the vehicle, Garza was in the front passenger seat, and a third individual, "Jason", was in the rear seat behind Garza. Stallknecht arrived in another vehicle with his brother-in-law, Derek Bodenbender, who was providing the money to make the drug purchase. During the transaction, Stallknecht waited in the driver's seat of Bodenbender's car while Bodenbender got into the car with Ayala, Garza, and Jason to make the exchange. At some point a conflict arose, and Bodenbender was fatally shot as he was attempting to exit Ayala's car. After the shooting, Ayala sped out of the parking lot and drove away. Stallknecht asked someone in the establishment to call for help and attempted to resuscitate Bo-

denbender. Paramedics arrived and continued resuscitation efforts to no avail.

Stallknecht initially told the police at the scene that he and Bodenbender had been exiting their car to go into the strip club when some men in another car tried to rob them and shot Bodenbender. After the police located plastic baggies and blood-stained money in the back of Bodenbender's car, Stallknecht revised his description of the events and admitted that he and Bodenbender had been attempting to purchase drugs when the shooting took place. It was not until later, however, that Stallknecht also stated that he had actually seen Garza shoot Bodenbender.

The following day, the murder investigation was assigned to Detective Thomas Matjeka. Matjeka reviewed the witness statements and other evidence that had been taken at the scene of the murder, returned to view the scene himself, contacted Stallknecht and his girlfriend and took additional statements from them, and attempted to locate any other potential witnesses to the shooting. Based upon his early investigation, Matjeka focused his attention on Guadalupe Garza and Paul Ayala as suspects in the murder. Stallknecht was able to identify both Garza and Ayala in photo line-up displays. After approximately two weeks of trying to locate and interview Garza and Ayala, Matjeka obtained an arrest warrant for Garza, gave it to the gang unit, and asked them to assist him in trying to locate and arrest Garza.[2]

Troy Ragland, an officer with the gang unit, executed the arrest warrant for Garza. After receiving the warrant, Ragland and other members of the gang unit went to Garza's mother's home and several

---

1. In one of his statements, Garza claimed that there had been additional unidentified people in the car with him that night.

2. Matjeka's investigation also revealed that Garza was a documented member of the 2:6 Nation/Spanish Gangsters street gang.

other locations where they believed Garza might be found. During this process, Ragland asked an individual at one of these locations if he knew Garza. The individual responded that he did not. Immediately after this encounter with Ragland, the individual was seen walking toward another male and warning him that the police were looking for him and he should run. Ragland recognized this second individual as fitting Garza's description. At that time, Ragland exited his car, asked the individual to get down, and handcuffed him. The individual then identified himself as Guadalupe Garza. Following his arrest, Garza was advised of his rights, which he waived, before proceeding to give two written statements regarding the events surrounding Bodenbender's murder.

Garza asserts on appeal that the trial court erred in denying his pre-trial motion to suppress his written statements. Specifically, Garza contends that his statements should have been suppressed because: (1) the detective failed to advise the magistrate in the affidavit in support of the arrest warrant that Stallknecht had initially lied to the police when he was questioned about the events on the night of Bodenbender's murder; and (2) the statements were the fruits of an unlawful arrest because the arresting officer did not have probable cause to believe that the person he handcuffed was or had been engaged in any criminal activity at the time of his arrest.

### STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress evidence for abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Applying a bifurcated standard of review, we afford almost total deference to the trial court's determination of historical facts, but review *de novo* the trial court's appli-

cation of the law to the facts when it does not turn on credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002).

### ANALYSIS

### *Affidavit in Support of Arrest Warrant*

Garza contends on appeal that his written statements should have been suppressed by the trial judge because the officer who submitted the affidavit in support of the arrest warrant intentionally, knowingly, or with reckless disregard for the truth of the affidavit, omitted information material to the magistrate's determination of probable cause—specifically, that the officer failed to state that an informant relied upon in the affidavit had given several versions of the events described in the affidavit. We disagree.

In *Franks v. Delaware*, the United States Supreme Court held that if an affirmative misstatement is knowingly or recklessly included in a probable cause affidavit and it is material and necessary to establishing probable cause, the warrant is rendered invalid if the remaining content is insufficient to establish probable cause under the Fourth Amendment. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). While some state and federal courts have extended the *Franks* analysis to omissions from probable cause affidavits, our own Court of Criminal Appeals has never extended the *Franks* analysis to omissions. *Compare United States v. Martin*, 615 F.2d 318, 328 (5th Cir.1980)(recognizing that allegations of material omissions should be treated essentially like claims of material misstatements under *Franks*), and *Melton v. State*, 750 S.W.2d 281, 284 (Tex.App.-Houston [14th Dist.] 1988, no pet.)(treating omissions essentially the same as material misstatements), *with Massey v. State*, 933 S.W.2d 141, 146 (Tex.Crim.App.1996)(not-

ing that it has not extended the *Franks* analysis to omissions), *and Brooks v. State*, 642 S.W.2d 791, 796–97 (Tex.Crim.App. [Panel Op.] 1982)(noting that appellant's reliance upon *Franks* is misplaced where the complaint is that the affiant omitted facts about an informant, rather than knowingly making false statements); *see also Darby v. State*, 145 S.W.3d 714, 722 (Tex.App.-Fort Worth 2004, no pet.)(applying *Franks* analysis to omissions); *Blake v. State*, 125 S.W.3d 717, 723–24 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *Heitman v. State*, 789 S.W.2d 607, 610–11 (Tex.App.-Dallas 1990, pet. ref'd).

■ Garza has not shown that Detective Matjeka knowingly, intentionally or with reckless disregard for the truth, included any material false statements in his affidavit; therefore, he has not shown that he comes within the purview of the *Franks* rule. *See Brooks*, 642 S.W.2d at 796. Absent such a showing, we will not look beyond the four corners of the affidavit on a challenge to the sufficiency of the affidavit's statement of probable cause. *Ramsey v. State*, 579 S.W.2d 920, 921 (Tex.Crim.App. [Panel Op.] 1979).

■ An affidavit in support of a search or arrest warrant must provide the magistrate with sufficient information to support an independent judgment that probable cause exists for the issuance of the warrant. *Jones v. State*, 568 S.W.2d 847, 854 (Tex.Crim.App.1978)(citing *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)); *Burnett v. State*, 754 S.W.2d 437, 443 (Tex.App.-San Antonio 1988, pet. ref'd). The facts stated in the affidavit must go beyond the mere suspicions of the affiant. *Burnett*, 754 S.W.2d at 443. The sufficiency of the affidavit is examined under the "totality of the circumstances" analysis established in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317,

76 L.Ed.2d 527 (1983). *Id.* Here, Detective Matjeka's affidavit included specific facts, based upon the personal observations of Stallknecht and others, that provided the magistrate with a sufficient basis upon which to make a probable cause determination related to Garza. *See Martin*, 615 F.2d at 324 (information based upon personal observations of the informant satisfies requirement to provide facts from which magistrate can determine that criminal activity was or has taken place, "particularly when the tipster reveals his personal involvement in the criminal undertaking").

■ Even if we were to agree with those courts which have applied the *Franks* analysis to deliberate omissions, we still would not agree that the omissions raised here would render the affidavit invalid. The record does not reveal that Detective Matjeka intentionally omitted reference to the fact that Stallknecht had made conflicting statements to the police when initially interviewed, nor does it show any desire by Matjeka to deceive or mislead the magistrate. *See Martin*, 615 F.2d at 328 (defendant must show by a preponderance of the evidence that the omissions were made intentionally or with reckless disregard for the accuracy of the affidavit). "Under *Franks*, a proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product 'of deliberate falsehood or of reckless disregard for the truth ...'." *Martin*, 615 F.2d at 329 (quoting *Franks*, 438 U.S. at 171, 98 S.Ct. 2674); *see also Melton*, 750 S.W.2d at 284. At the suppression hearing, Matjeka testified that he believed Stallknecht's conflicting statements to be immaterial to the probable cause determination. In addition, the affidavit contains information about Stallknecht's own involvement in the drug deal that night; statements from other witnesses

corroborating Garza's involvement with the shooting; and other evidence gathered during the investigation further corroborating the details provided by Stallknecht. The record here does not support a conclusion that Matjeka deliberately presented a falsehood to the magistrate, with the intent to mislead, which materially affected the probable cause determination.

Furthermore, application of a *Franks* analysis to omissions would require us to also determine, "whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause for [Garza's] arrest. If it would not, we would be required to void the warrant and suppress the evidence seized pursuant to it." *Martin*, 615 F.2d at 328; *see also Melton*, 750 S.W.2d at 284. Here, even if the omitted information had been included, the affidavit would have still been sufficient to support the magistrate's determination of probable cause for Garza's arrest. *See Massey*, 933 S.W.2d at 146. Accordingly, the trial court did not err in denying Garza's motion to suppress his written statements on the basis of a deficient probable cause affidavit.

### Execution of Arrest Warrant

Garza also contends on appeal that the trial court erred in denying his motion to suppress because the statements were the result of an unlawful arrest—specifically, he argues that the arresting officer did not have probable cause to suspect that Garza was or had been engaged in criminal activity at the time of the arrest. Again, we disagree.

It is undisputed that Garza was under arrest when Officer Ragland placed him on the ground and handcuffed him. *See* TEX. CODE CRIM. PROC. ANN. art.15.22 (Vernon 1977)("A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest"); *Burkes v.*

*State,* 830 S.W.2d 922, 925 (Tex.Crim.App. 1991). The issue raised by Garza is whether Ragland had sufficient information at the time of the arrest to execute the warrant.

To pass constitutional muster, an arrest must be supported by probable cause to believe that a particular person has committed or is committing an offense. *Amores v. State,* 816 S.W.2d 407, 411 (Tex. Crim.App.1991). "Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense." *Id.* at 413. When an arrest is made pursuant to a warrant, the determination of probable cause has already been made by the issuing magistrate. *See* TEX.CODE CRIM. PROC. ANN. art. 15.01 (Vernon 1977). We have already determined that the affidavit submitted by Detective Matjeka was sufficient to support the magistrate's determination of probable cause. The affidavit placed sufficient facts before the magistrate to support a conclusion that there was probable cause to believe that Garza had been involved in the murder of Bodenbender.

At the time of Garza's arrest, Officer Ragland and his partner had stopped one individual and asked if he knew or had any information about the whereabouts of Garza. The individual stated that he did not; however, he immediately approached Garza and warned him that the police were looking for him and that he should run. Officer Ragland testified that, upon hearing this statement, he left his vehicle and told the second individual to "get down". He further testified that he was then able to identify this second man as likely being Guadalupe Garza based on the description

and information provided in the warrant and his personal observations. He then handcuffed the individual and confirmed that he was in fact Guadalupe Garza.

We conclude that the warrant provided the officers with probable cause to arrest Garza and that the arresting officers had sufficient information at the time of the arrest to identify Garza as the person named in the warrant. Accordingly, Garza's arrest was a lawful arrest pursuant to a valid warrant, and Garza's subsequent statements were not the fruits of an illegal arrest. The trial court did not err in denying Garza's motion to suppress his written statements on the basis of the arrest. Accordingly, we overrule Garza's issues on appeal, and affirm the trial court's judgment.