NUMBER 13-05-00673-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

                                                                                                                       


JAMES WHITE,                                                                                 Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

                                                                                                                        

                    On appeal from the 221st District
Court

                                    of
Montgomery County, Texas.

                                                                                                  
                     

                      MEMORANDUM OPINION

 

               Before Justices Hinojosa,
Rodriguez, and Garza

                         Memorandum
Opinion by Justice Hinojosa

 








A jury found appellant, James White, guilty of the
offense of robbery.  After appellant
pleaded Atrue@ to five enhancement counts, the trial court
assessed his punishment at twenty-five years=
imprisonment.  In two issues, appellant
contends the trial court erred in denying his motion to suppress (1) items
seized from him at the time of his arrest, and (2) evidence that two witnesses
picked him out of a photographic line-up. 
We affirm.

A.  Background

On December 10, 2003, at approximately 8:00 PM, the ADollar General@ store in Magnolia County, Texas was robbed by an
African-American man wearing a blue windbreaker and a black ski mask pulled
down over his face.  The robber pointed a
gun at the cashier and demanded that she open the cash register; he then took
$500 in cash from the register and fled. 
Tonika Washington and Velisa Jones, patrons of the Dollar General at the
time of the robbery, told police that before the robbery, they had seen a man
outside the store wearing the same clothing as the robber, but without the ski
mask over his face.  A person wearing the
same color windbreaker and ski mask was responsible for robbing four other
stores in the same area during the months of November, December, and January.

At about 6:30 PM on January 28, 2004, Officer Doug
Johnson was eating at a ASubway@ restaurant and noticed appellant, wearing a black
ski cap and a blue windbreaker, loitering in the parking lot in front of the Subway.
The officer was suspicious because the area was not generally frequented by
pedestrian traffic, and the appellant=s clothing matched the description of the clothing
worn by the suspect in the string of robberies, one of which Officer Johnson
was investigating.  Appellant also
matched the description of the man who had robbed that particular Subway.  Further, appellant was coming from an area
that the robbery suspect had fled to following each of the robberies, and he
was heading towards the general area where most of the robberies had occurred.








Officer Johnson left the restaurant, got into his
patrol car, and drove in the direction that he had last seen appellant
heading.  As he approached appellant, he
turned on his overhead lights, stopped the car, and got out.  When appellant saw the officer get out, he
turned and ran. The officer yelled AHey!@ and chased after him.  After apprehending appellant, Officer Johnson
handcuffed him and patted him down; a realistic-looking toy gun was found.  More officers then arrived, and a thorough
search was performed.  The officers found
a ski mask with cut-out eye holes and plastic bags from one of the robbed
stores on appellant=s person.  The
subject was then interviewed. 

After appellant=s arrest, Washington and Jones were each shown a
photo line-up.  They both identified
appellant as the robber of the Dollar General. 
Over appellant=s objection, the results of both photographic
line-ups were admitted.

B.  Standard of Review








A trial court's ruling on a motion to suppress is
generally reviewed for abuse of discretion.  See Ford v. State, 26 S.W.3d 669, 672
(Tex. App.BCorpus Christi 2000, no pet.) (citing Oles v.
State, 993 S.W.2d 103, 106 (Tex. Crim. App.1999)).  In a suppression hearing, the trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given to their testimony.  State v. Ballard, 987 S.W.2d 889, 891
(Tex. Crim. App.1999).  In reviewing a
trial court's ruling on a motion to suppress, we afford almost total deference
to the trial court's determination of the historical facts that the record
supports, especially when the trial court's findings turn on evaluating a
witness's credibility and demeanor.  State v. Ross, 32 S.W.3d 853, 856 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App.1997).  We afford the same amount of
deference to the trial court's ruling on Aapplication of law to fact questions,@ also known as Amixed questions of law and fact,@ if resolving those ultimate questions turns on
evaluating credibility and demeanor.  Ross, 32 S.W.3d at 856; Guzman, 955
S.W.2d at 89.  However, we review de novo
questions of law and Amixed questions of law and fact@ that do not turn on an evaluation of credibility and
demeanor.  Ross, 32 S.W.3d at 856;
Guzman, 955 S.W.2d at 89.  We
uphold a trial court's ruling on a suppression motion if it is reasonably
supported by the record and is correct on any theory of law applicable to the
case.  Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App.1996).

C.  Discussion

In his first issue, appellant contends that the
trial court erred in not suppressing the evidence found on him when he was
arrested.  Appellant asserts that Officer
Johnson did not have probable cause to arrest him.

Before we determine whether Officer Johnson lacked
probable cause, we must determine whether the search was conducted during an
arrest or an investigative detention. 
The United States Supreme Court has recognized the difference between an
arrest and a brief Ainvestigative detention,@ or a Terry-stop.  See Terry v. Ohio, 392 U.S. 1, 11 n.5
(1968).  An investigative detention is Aone during which the police are allowed to briefly
question a suspicious person respecting his identity, his reason for being in
the area or location, and to make similar reasonable inquiries of a truly
investigatory nature.@  Amores v.
State, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991).  An individual has been arrested when Ahe has been actually placed under restraint or taken
into custody by an officer.@  Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 2005).  








There is no bright-line rule that differentiates
between an arrest and an investigative detention, or provides that the act of
handcuffing is always the equivalent of an arrest.  Rhodes v. State, 945 S.W.2d 115, 118 (Tex.
Crim. App. 1997).  Whether the stop by an
officer is an arrest or a mere investigative detainment depends on the
circumstances present in each case;  there
are several factors to consider, such as (1) the extent to which appellant was
restrained and prevented from leaving, compared to the level of restraint
necessary to secure the officer=s safety, (2) the officer=s belief regarding whether it was an arrest, and (3)
whether the officer actually conducted an investigation in conjunction with the
stop.  See Balentine v. State, 71
S.W.3d 763, 771 (Tex. Crim. App. 2002); Burkes v. State, 830 S.W.2d 922,
925 (Tex. Crim. App. 1991); Amores, 816 S.W.2d at 412. 

We conclude that the trial court did not abuse its
discretion in finding that Officer Johnson=s stop of appellant was an investigative detention
and not an arrest.  Although Officer
Johnson handcuffed appellant after chasing him down, the use of handcuffs is
not determinative in and of itself.  
Furthermore, given the fact that it was dark outside and the stop took
place in a particularly poorly-lit area, as well as the fact that Officer
Johnson was alone at the time, handcuffing appellant was reasonably necessary
for both the officer=s safety and to restrain appellant so that the
officer could conduct his investigation. 
In addition, Officer Johnson testified that he did not believe the
detention was anything more than a Terry-stop.

Appellant, relying heavily on Burkes v. State,
contends that Officer Johnson=s stop must be an arrest because he did not
immediately conduct an investigation.  See
Burkes, 830 S.W.2d at 923.  However,
we conclude that Burkes is distinguishable in several important
respects.








In Burkes, the officer believed that he was
arresting the subject; no investigation was ever done.  Id. 
After the officer handcuffed Burkes, he searched him and then took him
back to his partner.  Id.  The partner conducted a more thorough search
and then formally arrested him. Id.

In this case, Officer Johnson attempted to interview
appellant prior to handcuffing him, but because appellant fled, Officer Johnson
had no choice but to handcuff and search him prior to interviewing him.  As we noted above, the stop took place after
dark in a poorly-lit area, and Officer Johnson conducted his investigation as
soon as it was safe for him to do so.

Because Officer Johnson=s initial stop of appellant was an investigative
detention, it was only required that he have reasonable suspicion of criminal
activity to conduct the stop.  See
Terry, 392 U.S. at 11.  AThe stopping of the individual to inquire is not an
arrest and the ground upon which the police may make the inquiry may be less
incriminating than the ground for an arrest.@  Id. 
The reasonableness of the detention will be evaluated by considering the
totality of the circumstances Aand will be justified when the detaining officer has
specific articulable facts, which, taken together with rational inferences from
those facts, lead him to conclude that the person detained actually is, has
been, or soon will be engaged in criminal activity.@  Woods v.
State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). These facts must amount to
more than a mere hunch or suspicion.  Williams
v. State, 621 S.W.2d 609, 612 (Tex. Crim. App.1981). 








Officer Johnson saw appellant loitering in the
parking lot in front of a Subway that recently had been robbed by someone
wearing similar clothing and a ski cap of the same color.  Additionally, Officer Johnson observed
appellant approach from an area that the suspect in the string of robberies had
often fled to and saw him leave in the direction of several other stores,
including the Dollar General, that was robbed by someone matching appellant=s description. 
These circumstances give rise to a reasonable suspicion of criminal
activity.  Accordingly, we conclude that
the trial court did not abuse its discretion in ruling that Officer Johnson=s suspicion of appellant was reasonable and
justified his stop. 

Appellant, relying on Balentine v. State,
argues that stops may be premised only on reasonable suspicion that criminal
activity has been committed in the immediate past. See Balentine, 71
S.W.3d at 768.  However, appellant=s argument has never been the law in Texas:  a search, when premised on Aa reasonable, articulable suspicion@ that the suspect Ahas
been . . . involved in criminal activity,@ need not be regarding criminal activity in the
immediate past.  Woods, 956 S.W.2d
at 38.  This argument was also
specifically overruled by the U.S. Supreme Court in United States v. Hensley,
469 U.S. 221, 229 (1985).

Accordingly, we hold that the trial court did not
abuse its discretion in denying the appellant=s
motion to suppress the evidence found on him at the time of his arrest.  Appellant=s
first issue is overruled.

In his second issue, appellant contends that the
trial court erred in allowing testimony that two witnesses had identified
appellant in a photographic line-up as the man who robbed the Dollar
General.  Specifically, appellant argues
that the photographic line-ups were impermissibly suggestive. 








To preserve a complaint for appellate review, a
defendant must make his legal objection to the trial court, and the trial court
must either rule on the objection, or the defendant must object to the trial
court=s failure to rule on his objection.  Tex.
R. App. P. 33.1.  Texas law
requires that to complain of error to an appellate court, appellant must first
make an objection that is specific and timely.  Geuder v. State, 115 S.W.3d 11, 13 (Tex.
Crim. App. 2003).

Further, with two exceptions, the law in Texas
requires a party to continue to object each time inadmissible evidence is
offered.  The two exceptions require
counsel to either (1) obtain a running objection, or (2) request a hearing
outside the presence of the jury.

 

Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). To preserve error for
appellate review, a party must also state the specific grounds upon which the
party seeks to exclude the evidence, and the complaint made on appeal must
match the objection made at trial.  Thomas
v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

Prior to trial, appellant filed a motion to suppress
all pre-trial identifications until appellant=s
counsel had an opportunity to test their reliability.  When the State called Officer James Graham,
the police officer who had presented the two pre-trial photographic line-ups to
Washington and Jones, the trial court removed the jury and allowed appellant to
examine him about the line-ups.  During
the hearing, no formal objection was made to the admissibility of the
photographic line-up identifications. 
The next day, during Officer Graham=s testimony in front of the jury, appellant objected
on the grounds of hearsay, the right to cross-examine, and discovery, all of
which were overruled.  During trial,
appellant did not object on the ground that the photographic line-ups were
impermissibly suggestive.

Because appellant=s
complaint on appeal differs from that at trial, we conclude that error is not
properly preserved.  Appellant=s second issue is overruled. 

The judgment of the trial court is affirmed.             

 

FEDERICO G. HINOJOSA

Justice

 

Do
not publish.  See Tex. R. App. P. 47.2(b).

Memorandum
Opinion delivered and filed 

this the 27th day of July, 2006.