[COMMENT1] 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-263-CR

 

 

DEWAYNE H. AKINS                                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. Introduction 

Appellant Dewayne H. Akins
was convicted of possession with intent to deliver a controlled substance.  The trial court sentenced him to nine years= confinement.  Akins contends
that the trial court erred by admitting evidence obtained as the result of an
illegal arrest.  We affirm.








II. Background Facts








On December 15, 2004, Stanley
Davis, an investigator in the narcotics division of the Mansfield Police
Department, received a tip from a confidential informant.  The informant told Davis that she had seen
Akins in possession of methamphetamine the previous day, and that just prior to
calling the police, she had spoken to Akins again and confirmed that Akins
still had  methamphetamine with him.  The informant also provided Davis with
information about Akins=s present
location.  She said that Akins could be
found at a convenience store located at 8475 Mansfield Highway in Arlington, Texas.
Within an hour of receiving the tip, 
Davis and three other investigators drove to the convenience store and
set up surveillance of Akins.  The
investigators observed Akins talking with another man as he exited the gas
station.  When Akins entered his vehicle,
the police blocked it from behind with one of their cars.  The investigators then approached Akins with
their weapons drawn, placed him on the ground, and handcuffed him.  Davis testified that Akins was not free to
leave.  One of the investigators asked
Akins if he had any methamphetamine in his possession.  After Akins answered that he had
methamphetamine in his pocket, the investigator reached into Akins=s pocket and removed the drug. 
The investigators did not read Akins his Miranda v. Arizona[1]
rights before they questioned him.

Prior to trial, Akins filed a
motion to suppress the statement he made as a result of the investigator=s questioning as well as the methamphetamine seized from his
pocket.  A hearing was held on the
motion, and Davis testified to the occurrences discussed above.  The trial court subsequently denied Akins=s  motion.

III. Motion to Suppress








Because Akins=s six points essentially raise the same issue and are combined in
Akins=s brief, we too will address all points together.  Akins argues that the trial court erred by
failing to exclude the statement he made to the police admitting that he was in
possession of methamphetamine and the methamphetamine found in his pocket
because this evidence was obtained as the result of an illegal arrest.  Specifically, Akins argues that the arrest
was illegal because the police did not have a warrant and the arrest did not
fall within one of the exceptions to the warrant requirement as set forth in
chapter 14 of the code of criminal procedure. 
However, if we hold that the arrest was legal, then in the alternative,
Akins argues that the evidence at issue was inadmissible because it was
obtained as the result of custodial interrogation after the police failed to
apprise him of his Miranda rights. 


A. Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999).  Therefore, we give almost total
deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When there are no explicit findings
of historical fact, the evidence must be viewed in the light most favorable to
the trial court=s
ruling.  Id.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004);
Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

B. The Arrest








Akins argues that his arrest
was illegal because it was made without a warrant and without the benefit of
one of the exceptions to the warrant requirement as set out in chapter 14 of
the code of criminal procedure.  Tex. Code Crim. Proc. Ann. '' 14.01-.04 (Vernon 2005 & Supp. 2006-07).  He contends that, therefore, the evidence
obtained as a result of the arrest should have been suppressed.  In its brief, the State concedes that Akins
was arrested without a warrant when the police handcuffed Akins, pointed their
guns at him, placed him on the ground, and blocked his car in the parking lot.[2]  We hold that the police arrested Akins when
they initially approached him and restrained him. 

1. Arrest v. Investigative Detention








An arrest occurs when a
person=s liberty of movement is restricted or restrained by an officer or
person executing a warrant of arrest or without a warrant.  Tex.
Code Crim. Proc. Ann. art. 15.22 (Vernon 2005); Medford v. State,
13 S.W.3d 769, 772‑73 (Tex. Crim. App. 2000); Amores v. State, 816
S.W.2d 407, 411 (Tex. Crim. App. 1991). 
However, a stop is deemed an investigative detention when a police
officer detains a person reasonably suspected of criminal activity to determine
his identity or to momentarily maintain the status quo to garner more
information.  Hoag v. State, 728
S.W.2d 375, 380 (Tex. Crim. App. 1987). 
An investigative detention must last no longer than necessary to
effectuate the purpose of the stop and must involve actual investigation.  See Davis v. State, 947 S.W.2d 240,
244-45 (Tex. Crim. App. 1997).  








Distinguishing between the
two types of seizures can be difficult, particularly because the distinction
rests on a fact‑specific inquiry rather than clearly delineated
criteria.  Johnson v. State, 912
S.W.2d 227, 235 (Tex. Crim. App. 1995); Zayas v. State, 972 S.W.2d 779,
789 (Tex. App.CCorpus
Christi 1998, pet. ref=d).  For purposes of constitutional analysis, both
investigative detentions and arrests are seizures of a citizen by law
enforcement officers.  Zayas, 972
S.W.2d at 789.  The differences between
the two are the degrees of intrusion involved and the different legal
justifications required of each.  Id.  Whether a seizure is an arrest or an
investigative detention depends on the reasonableness of the intrusion under
all of the facts.  See Rhodes v. State,
913 S.W.2d 242, 247 (Tex. App.CFort Worth 1995), aff=d, 945 S.W.2d 115 (Tex. Crim. App.), cert.
denied, 522 U.S. 894 (1997).  The
nature of the crime under investigation, the behavior of the individual, the
degree of suspicion, the location of the stop, the time of day, and the officer=s testimony concerning whether the defendant was free to leave the
scene are all factors that bear on the issue. 
See Illinois v. Wardlow, 528 U.S. 119, 124‑25, 120
S. Ct. 673, 676 (2000); see also 4 Wayne
R. LaFave, Search and Seizure ' 9.2(d) (3d ed. 1996).  













A reviewing court should also
examine the degree of force used to effect the seizure.  In an investigative detention situation,
officers may use such force as is reasonably necessary to effect the goal of
the stop.  For example, there is no
bright‑line rule that handcuffing a suspect always constitutes an
arrest.  See Rhodes, 945 S.W.2d at
118.  Handcuffing is not ordinarily
proper in a mere investigative detention, but it may be resorted to in special
circumstances, such as when necessary to maintain officer safety or to thwart
the suspect=s attempt to
frustrate further inquiry.  Id. at
117.  However, if the force utilized
exceeds the goal of the stop, such force may transform an investigative stop
into an arrest.  See, e.g., State v.
Moore, 25 S.W.3d 383, 385‑86 (Tex. App.CAustin 2000, no pet.) (holding that although officer possessed
reasonable, articulable facts justifying an investigative stop, handcuffing of
suspect constituted excessive force under the circumstances and transformed
detention into an arrest); Gordon v. State, 4 S.W.3d 32, 37 (Tex. App.CEl Paso 1999, no pet.) (holding that in the absence of any proof in
the record to demonstrate the necessity for the officer=s actions, what may have been a valid investigative detention at the
outset became an arrest); Flores v. State, 895 S.W.2d 435, 441 (Tex.
App.CSan Antonio 1995, no pet.) (holding that initial detention of
defendant was arrest rather than mere investigative detention because defendant
was forced to exit car at gunpoint, assume a spread-eagle position with his
hands on roof of his car, and officer testified that defendant was not free to
leave); compare Rhodes, 945 S.W.2d at 117-18 (holding that officer=s handcuffing of two men was reasonable and did not transform
investigative detention into arrest when officers responded to report of a
burglary in progress at 9:45 p.m. and found two men at the address in question
and officer testified that he did this for his own protection A[d]ue to the nature of the call and the way they were acting scared
like maybe they had been caught at something, and I was alone, and two of them,
and they [were] both bigger than I was@); Goldberg v. State, 95 S.W.3d 345, 360 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d), cert. denied, 540 U.S. 1190 (2004) (holding that it was
reasonable, in light of fact that a brutal murder had just occurred, for police
officer to handcuff defendant for officer=s own safety while attempting to ascertain whether defendant who had
been identified as person driving get away car, had, in fact, been driving that
particular car that day); Nargi v. State, 895 S.W.2d 820, 823 (Tex. App.CHouston [14th Dist.] 1995) pet. dism=d, improvidently granted, 922 S.W.2d
180 (Tex. Crim. App. 1996) (holding that handcuffing of defendant during investigatory
stop did not transform stop into arrest; potentially dangerous behavior
displayed by defendant in speeding and running two red lights and defendant=s anxious and excited demeanor supported reasonable inference that
police officer needed to obtain control over defendant to question him safely).

Additionally, a reviewing
court must look to see if an investigation was actually undertaken.  Burkes v. State, 830 S.W.2d 922, 925
(Tex. Crim. App. 1991).  An investigative
detention implies that the obtrusive act is for the purpose of actually
investigating.  Id.  Therefore, when a reviewing court can find
that no investigative questioning occurred, the detention cannot be considered
investigatory and rises to the level of an arrest.  Id. 









We believe that the case of Taylor
v. State from this court is a Aspotted dog@ or Awhite horse case@ in
resolving this issue.[3]
 874 S.W.2d 362 (Tex. App.CFort Worth 1994, pet. ref=d).  Based on a tip from an
informant, police officers believed that Taylor was in possession of
methamphetamine.  Id. at 363.  As a result of the tip, police officers drove
to a carwash where they found Taylor.  Id.
at 364.  The officers blocked Taylor=s car in a carwash stall by parking police cars in front of and behind
her vehicle.  Id.  Officers then drew their guns and pointed
them at Taylor.  Id.  One of the officers then asked Taylor if she
had any drugs with her.  Id.  After Taylor answered yes, an officer reached
into Taylor=s car,
grabbed her purse, opened it, and found methamphetamine.  Id. 
One of the officers testified that at the time of the questioning,
Taylor was not free to leave.  Id. at
365.  This court held that the restraint
on Taylor=s liberty
was to such a degree that it constituted custody and that this was not an
investigative detention situation.  Id.








Similarly, in the case of Amores,
the court of criminal appeals held that the detention of a defendant was an
arrest rather than an investigative detention.  816 S.W.2d at 411.  In Amores, based on a tip, a police
officer acting alone and without any assistance from other officers blocked the
defendant=s car in a
parking lot, drew his weapon, ordered the defendant out of the car at gunpoint,
ordered him to lie face-down on the pavement, and told him that he would be
shot if he did not obey the officer=s orders.  Id.  Furthermore, the officer did not ask the
defendant any questions before seizing him. 
Id. at 412.  The court
reasoned that under those facts, the defendant had been restricted or
restrained in his liberty to such a degree as to constitute an arrest.  Id. 


Additionally, the court of
criminal appeals=s decision
in Burkes provides guidance in resolving this issue.  830 S.W.2d at 925.  In Burkes, the court held that the
seizure of the defendant was an arrest rather than an investigative detention
under facts similar to the case before us. 
Id.  In that case, the
police received a tip stating that a Apit-bulldog with drugs taped to its belly could be found at an area of
the city known as >The Front,=@ an area composed of nightclubs and rundown buildings.  The area was notorious for illegal drug
trafficking and use.  Id at
923.  Four police officers went to the
area to investigate the call.  Id.  When the squad car arrived in front of one of
the nightclubs, several persons ran from the back of the building.  Id. 
Burkes was one of these persons.  Id. 
One of the officers caught Burkes as he attempted to run away.  Id. 
The officer commanded Burkes to lie on the ground.  He then rolled Burkes over and placed
handcuffs on him without questioning him as to why he was running away.  Id. 
In that case, the court reasoned that the amount of force used to effect
the stop combined with the fact that the investigative questioning occurred
after Burkes was handcuffed rendered the detention an arrest rather than an
investigative detention.  Id. at
925.  








2. Application of Law to
Facts

The facts of this case are
similar to those in the cases discussed above. 
See Amores, 816 S.W.2d at 407; Burkes, 830 S.W.2d at 925;
Taylor, 874 S.W.2d at 362.  As in Amores
and Taylor, here, police officers blocked Akins=s vehicle in such a way that he was unable to leave the area.  Furthermore, like the officers in all three
cases, the police officers in this case pointed their guns at Akins,
placed him on the ground, and handcuffed him. 
Moreover, as in Taylor and Burkes, the officers in this
case did not ask Akins any investigative questions until after they had
handcuffed him. 

Additionally, although Davis
testified that he handcuffed Akins and pointed his gun at Akins because he was
aware of Akins=s previous
weapons charges, we note that Davis was assisted at the scene by three other
officers.  Because there were four
officers on the scene and one suspect, the likelihood that Akins would
overpower the police officers was minimal. 
See Welcome v. State, 865 S.W.2d 128, 133 (Tex. App.CDallas 1993, pet. ref=d).








Further, there is no evidence
that at the time of the seizure, the officers had reason to believe that Akins
was in possession of a weapon.  There was
no indication from the informant that Akins was in possession of a weapon, nor
had any of the officers observed Akins display a weapon or exhibit any violent
behavior.  Additionally, there is no
evidence that Akins was attempting to evade the investigator=s questioning or that he even could have driven away from the scene if
he had wanted to.  Before he was seized,
Akins was sitting in his car but had not yet started the ignition.  Moreover, Davis testified that Akins=s vehicle was blocked in the parking lot by one of the investigator=s cars.

Based on these facts, it is
clear that Akins was arrested when the officers handcuffed Akins, pointed their
guns at him, placed him on the ground, and blocked his car in the parking
lot.  See Tex. Code Crim. Proc. Ann. art. 15.22.  Further, we do not believe that the
circumstances in this case suggest that the level of force used by the
investigators was necessary to maintain officer safety or to thwart the suspect=s attempt to frustrate further inquiry.  Rhodes, 945 S.W.2d at 117.  Therefore, after reviewing the totality of
circumstances in this case, we hold that the restriction on Akins=s freedom of movement amounted to the degree associated with an
arrest, as opposed to an investigative detention.  See id.  Therefore, because Akins was arrested without
the benefit of an arrest warrant, we must decide if one of the warrant
exceptions applied.  

C. Warrant Exception








Although the United States
Constitution authorizes an arrest without warrant on probable cause, in Texas,
the authority to arrest a suspect without a warrant is governed by statute.  See Florida v. White, 526 U.S. 559, 564,
119 S. Ct. 1555, 1559 (1999); State v. Parson, 988 S.W.2d 264, 266 (Tex.
App.CSan Antonio 1998, no pet.).  In
Texas, a person may be legally arrested without a warrant only if (1) the
arrest falls within one of the statutory provisions authorizing a warrantless
arrest, and (2) the arrest meets the applicable probable cause requirement.  See Anderson, 932 S.W.2d at 506.








In this case, the State
argues that Akins=s arrest
fell within two exceptions contained in chapter 14 of the code of criminal
procedure.  Initially, the State argues
that Akins=s
warrantless arrest was valid because it fell under the exception contained in
article 14.01(b).  Article 14.01(b)
provides that A[a] peace
officer may arrest an offender without a warrant for any offense committed in
his presence or within his view.@  Tex. Code Crim. Proc. Ann. art. 14.01(b).  The test for probable cause for a warrantless
arrest under this provision is A[w]hether at that moment the facts and circumstances within the
officer=s knowledge and of which he had reasonably trustworthy information
were sufficient to warrant a prudent man in believing that the arrested person
had committed or was committing an offense.@  Beverly v. State, 792
S.W.2d 103, 104-05 (Tex. Crim. App. 1990) (emphasis added) (citing Beck v.
Ohio, 379 U.S. 89, 85 S. Ct. 223 (1964)). 
In other words, although the statute states that the offense must be one
that is committed within the officer=s presence or view, an officer can make a warrantless arrest based on
an offense that was committed at an earlier time and further, the officer does
not even have to personally see the offense committed before the warrantless
arrest is justified under article 14.01(b). 
Id. 








This means that in
determining whether probable cause exists to believe an offense was committed
within a officer=s presence
or view, an officer=s knowledge
and trustworthy information may come from facts and circumstances obtained from
lay citizens.  Id.  For instance, the law is clear that probable
cause for an arrest can exist based on the tip of a reliable informant if the
informant=s
information is highly detailed, and the details given by the informant are
verified by the officers before making the arrest.  See Whaley v. State, 686 S.W.2d 950,
951 (Tex. Crim. App. 1985) (relying on Illinois v. Gates, 462 U.S. 213,
232‑33, 103 S. Ct. 2317, 2329-30 (1983), and Draper v. United States,
358 U.S. 307, 313‑14, 79 S. Ct. 329, 333-34 (1959)); Curry v. State,
965 S.W.2d 32, 34 (Tex. App.CHouston [1st Dist.] 1998, no pet.). 
Thus, if an officer has reasonably trustworthy information, which, when
coupled with the officer=s personal
observations, establishes probable cause to believe that an offense is being or
has been committed, the warrant exception will apply.  See Beverly, 792 S.W.2d at 104-05
(holding although no offense was committed in the presence of the officer, a
warrantless arrest was justified under article 14.01(b) because the officer had
reasonably trustworthy information, which, when coupled with the officer=s personal observations, established probable cause to believe that an
offense was being or had been committed). 
We look to the totality of the circumstances to determine if probable
cause existed based on an informant=s tip.  See Gates, 462
U.S. at 242‑43, 103 S. Ct. at 2339-40; Adkins v. State, 764 S.W.2d
782, 785 (Tex. Crim. App. 1988).








In the instant case, Davis
testified that he received information from a confidential informant whom he
had worked with on more than twenty occasions in the past and that he had found
the informant=s
information to be  reliable and
credible.  Davis stated that the
informant=s tips had
resulted in a number of arrests and convictions for drug possession.  Further, Davis testified that the informant
told him that she had seen Akins in possession of an ounce of methamphetamine
the previous day, that Akins kept the drugs in a plastic bag in his pocket, and
that just prior to calling Davis she had spoken to Akins and that Akins told
her that he was still carrying the drugs on his person.  The informant also gave Davis a physical
description of Akins.  Based on previous
encounters with Akins, Davis recognized the physical description the informant
provided of the individual in possession of narcotics as an accurate
description of Akins.  The informant also
told Davis where Akins could be located, described the vehicle he would be
driving including his license plate number, and stated that Akins would be in
the company of a woman named Maria Robles, who was driving a maroon minivan. 

Within an hour of receiving
the information, Davis proceeded to the convenience store where the informant
had said Akins could be found.  Akins=s vehicle and a maroon minivan were parked in front of the store.  A short time after Davis began surveying the
store, he observed Akins and a woman who matched the description of Maria
Robles provided by the informant exit the store.  

Thus, after receiving
information provided by a confidential informant, the police independently
corroborated the details given by the informant when Davis identified Akins and
his vehicle at the designated time and place. 
Because the reliable informant provided detailed information that was
verified by law enforcement officers, we conclude that probable cause existed
for the arrest in this case.  See
Whaley, 686 S.W.2d at 951 (holding that officers had probable cause for
warrantless arrest because officers verified all details given by informant
except question of whether suspect was carrying drugs; consequently, they had
reasonable grounds to believe that remaining item of unverified information was
also true).  Therefore, we hold that
under the totality of the circumstances, the officers had probable cause to
justify the warrantless arrest of Akins. 









Because we hold that the
warrantless arrest of Akins fell within the warrant exception contained in
article 14.01(b) of the code of criminal procedure and as a result was a legal
arrest, we need not address the State=s contention that the arrest fell under an additional warrant
exception.  Additionally, because we hold
that the arrest was legal, we do not reach Akins=s assertion that the evidence should have been suppressed as the
result of an illegal arrest.  See Tex. R. App. P. 47.1.

D. Evidence Obtained
Subsequent to the Arrest

In the alternative, Akins
argues that the statement obtained after the arrest was inadmissible because
Davis questioned him without first advising him of his Miranda rights.[4]  Further, he contends that the trial court
erred in denying his motion to suppress the methamphetamine evidence because
the methamphetamine was discovered as a result of the unwarned statement.  He contends that the methamphetamine should
be excluded as fruits of illegal activity in accordance with Wong Sun v.
United States, 371 U.S. 471, 83 S. Ct. 407 (1963), and article 38.23 of the
code of criminal procedure.  We disagree.

 








E. Application of Miranda








In Miranda v.
Arizona, The United States Supreme Court held that a person questioned by
law enforcement officers after being Ataken into custody or otherwise deprived of his freedom of action in
any significant way@ must first Abe warned that he has a right to remain silent, that any statement he
does make may be used as evidence against him, and that he has a right to the
presence of an attorney, either retained or appointed.@  384 U.S. at 444, 86 S. Ct. at
1612.  Statements elicited in
noncompliance with this rule may not be admitted for certain purposes in a
criminal trial.  See, e.g., Harris v.
New York, 401 U.S. 222, 226, 91 S. Ct. 643, 646 (1971) (admitting for
impeachment purposes defendant=s statement that was elicited without Miranda warning).  However, while the statement taken in
violation of Miranda must be suppressed, other evidence subsequently
obtained as a result of that statement (i.e., the Afruits@ of the
statement) need not be suppressed.  Michigan
v. Tucker, 417 U.S. 433, 452, 94 S. Ct. 2357, 2368 (1974); Oregon v.
Elstad, 470 U.S. 298, 314, 105 S. Ct. 1285, 1296 (1985); see also Baker
v. State, 956 S.W.2d 19, 23-24 (Tex. Crim. App. 1997) (holding mere
violations of Miranda rule are not covered by the state exclusionary
rule contained in article 38.23).  The
rule in Wong Sun requires suppressing the fruits of a defendant=s statement only when the statement was obtained through actual
coercion.  Tucker, 417 U.S. at 448‑49,
94 S. Ct. at 2365‑67; Elstad, 470 U.S. at 314, 105 S. Ct. at 1296.

Because Akins did not receive
his Miranda warnings before being questioned by the investigators, his
statement regarding his possession of methamphetamine was inadmissible.  See Miranda, 384 U.S. at 492, 494, 86
S. Ct. at 1637-38.  Accordingly, we hold
that the trial court erred by failing to suppress the statement.  However, we also hold that because the
methamphetamine was merely a Afruit@ obtained as
a result of the unwarned questioning, the trial court did not err by refusing
to suppress the methamphetamine evidence.[5]  See McGee v. State, 105 S.W.3d 609,
614 (Tex. Crim. App.), cert. denied, 540 U.S. 1004 (2003) (holding a
warrantless search incident to arrest permits officers to search a defendant,
or areas within the defendant=s immediate control, to prevent the concealment or destruction of
evidence).

 

 








F. Harm Analysis

Having found that the trial
court erred in admitting Akins=s statement, we must conduct a harm analysis to determine whether the
error calls for reversal of the judgment. 
Tex. R. App. P. 44.2.  If the error is constitutional, we apply rule
44.2(a) and reverse unless we determine beyond a reasonable doubt that the
error did not contribute to appellant=s conviction or punishment.  Tex. R. App. P. 44.2(a).  Otherwise, we apply rule 44.2(b) and
disregard the error if it did not affect appellant=s substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642-43 (Tex. App.CFort Worth 1998, pet. ref=d).








With respect to the erroneous
admission or exclusion of evidence, constitutional error is presented only if
the correct ruling was constitutionally required, because a mere misapplication
of the rules of evidence is not constitutional error.  See Alford v. State, 22 S.W.3d 669, 673
(Tex. App.CFort Worth
2000, pet. ref=d).  The United States Supreme Court held that, in
Miranda, it laid down concrete constitutional guidelines for law enforcement
agencies and courts to follow.  See
Dickerson v. United States, 530 U.S. 428, 439-40, 120 S. Ct. 2326, 2333‑34
(2000).  These guidelines established
that the admission of any statement given during custodial interrogation of a
suspect would depend on whether the police provided the suspect with the
constitutionally required Miranda warnings.  Id. 
We have held in this case that the trial court did not follow those
constitutional guidelines.  Consequently,
we hold that the error is constitutional error. 
See Alford, 22 S.W.3d at 673. 
Because we determine that the error is constitutional, rule 44.2(a) is
applicable.  Tex. R. App. P. 44.2(a).

Here, Akins was charged with the offense of possession with
intent to deliver a controlled substance. 
APossession@ means actual
care, custody, control, or management. Tex.
Health & Safety Code Ann. ' 481.002(38)
(Vernon Supp. 2006-07).  The improperly admitted statement went only to
the issue of Akins=s possession
of methamphetamine.  Inadmissible
evidence can be rendered harmless if other evidence of the defendant=s guilt is overwhelming.  See
Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986).  The methamphetamine found in Akins=s pocket was abundant evidence of his possession of methamphetamine
from which the jury could have concluded that Akins was in possession of
methamphetamine.  Therefore, after
carefully reviewing the record and performing the required harm analysis under
rule 44.2(a), we hold beyond a reasonable doubt that the trial court=s error did not contribute to Akins=s conviction or punishment.  Tex. R. App. P. 44.2(a).  Thus, we disregard the error.  See id.








IV.
Conclusion

Having overruled Akins=s six points, we affirm the trial court=s judgment.

 

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

 

LIVINGSTON,
J. filed a concurring opinion.

 

PUBLISH

 

DELIVERED:
August 31, 2006

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 








 




 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-263-CR

 

 

DEWAYNE H. AKINS                                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                  CONCURRING
OPINION

 

                                              ------------








I respectfully concur to the
majority opinion.  I write separately
only to disagree with the majority opinion=s analysis on the timing of appellant=s arrest.  As the majority notes
above, in its brief, the State conceded that appellant was arrested without a
warrant.  However, unlike the majority, I
do not read the State=s brief to
concede that appellant was arrested as soon as the officers approached him and
placed him on the ground at the gas station. 
I believe that the State conceded that appellant was arrested, but did
not concede the timing of appellant=s arrest (when the officers initially approached him, or after the
officers approached him and talked to him, and appellant told the officers that
he had drugs in his pocket).  An
appellate court must liberally construe a party=s brief.  Tex. R. App. P. 38.1(e), 38.9; Burke
v. State, 6 S.W.3d 312, 315 (Tex. App.CFort Worth 1999, no pet.) (op. on P.D.R.).  Thus, because the State did not concede when
the arrest occurred, we should not assume it conceded that appellant was
arrested immediately.  








Similarly, during oral
argument, appellant=s counsel
conceded that the investigators had reasonable suspicion to approach appellant
and investigate. Therefore, unlike the majority, I believe our sole inquiry is
to determine whether appellant was detained for investigation when the
investigators blocked appellant=s truck, drew their weapons, placed appellant on the ground, and
placed him in handcuffs, or whether he was immediately under arrest.[6]  If the initial stop was an investigative
detention as opposed to an arrest, we have nothing further to review regarding
the preliminary seizure because appellant conceded reasonable suspicion to
investigate.  See Hill v. State,
161 S.W.3d 771, 772 (Tex. App.CBeaumont 2005, no pet.) (holding appellant waived issue by conceding
it in oral argument).  Then, we would
only proceed to determine whether the investigative detention revealed
sufficient probable cause to arrest without a warrant.  However, if the preliminary stop was truly an
arrest as appellant contends, we must determine whether the arrest was a proper
warrantless arrest under article 14.01 of the code of criminal procedure at
that point in time.  See Tex. Code Crim. Proc. Ann. art. 14.01
(Vernon 2005). 

Applicable Law








We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  When officers possess reasonable suspicion
justifying a temporary investigative detention, they may use such force as is
reasonably necessary to effect the goal of the stop:  investigation, maintenance of the status quo,
or officer safety.  Morris v. State,
50 S.W.3d 89, 95 (Tex. App.CFort Worth 2001, no pet.); see Rhodes v. State, 945 S.W.2d 115,
117 (Tex. Crim. App.), cert. denied, 522 U.S. 894 (1997).  Reasonableness must be judged from the
perspective of a reasonable officer at the scene, rather than with the
advantage of hindsight.  Rhodes,
945 S.W.2d at 118; McCraw v. State, 117 S.W.3d 47, 52 (Tex. App.CFort Worth 2003, pet. ref=d).  Allowances must be made for
the fact that officers must make quick decisions under tense, uncertain, and
rapidly changing circumstances.  Rhodes,
945 S.W.2d at 118.  However, if the force
utilized exceeds that reasonably necessary to effect the goal of the stop, such
force may transform an investigative stop into a full-blown arrest.  See State v. Moore, 25 S.W.3d 383,
385-86 (Tex. App.CAustin 2000,
no pet.) (holding that although officer possessed reasonable, articulable facts
justifying an investigative detention, handcuffing of suspect constituted
excessive force under the circumstances and transformed the detention into an
arrest). 

Analysis

 








I believe that the majority=s reliance on Burkes v. State is misplaced.  830 S.W.2d 922 (Tex. Crim. App. 1991).  Unlike in our case, the police in Burkes
did not receive a call that a named person would be in possession of the drugs,
but merely that the drugs would be taped to a dog.  Further, the police in Burkes received
an anonymous phone call, whereas the police in this case received a phone call
from a known confidential informant. 
Additionally, during trial, the arresting officer testified that the
defendant was under arrest when he was handcuffed.  Id. at 925.  The court of criminal appeals stated that Ait must certainly be considered persuasive when the arresting officer admits
that a suspect was under arrest.@  Id.  Here, the arresting officer did not testify
that appellant was arrested when he was handcuffed, he merely stated that
appellant was not free to leave. 

Additionally, the majority=s Awhite horse case@ is also distinguishable from the present case.  See Taylor v. State, 874 S.W.2d 362
(Tex. App.CFort Worth
1994, no pet.).  In Taylor, the
police received a tip from a person, but the opinion does not say whether they
had received credible information from that person before.  Id. at 363.  When the police blocked the defendant=s car in the car wash bay, she was by herself, unlike in the present
case, where appellant was with Maria Robles and an unidentified man.  Additionally, the record in Taylor contains
no indication that the defendant was in a high crime/drug area, had previous
weapons charges, or that the police drew their weapons because of officer
safety.  








Here, the investigators
blocked appellant=s car in the
parking lot, drew their weapons, placed appellant on the ground, and handcuffed
him.  Appellant contends that he was
arrested when the police officers approached his truck. However, it cannot be
said that whenever police draw weapons on a person that the resulting seizure
must be an arrest rather than an investigatory detention.  Morris v. State, 195 S.W.3d 740, 745
(Tex. App.CAmarillo
2006, no pet.); see Rhodes, 945 S.W.2d at 117.  Similarly, ordering a suspect to the ground
does not necessarily convert an investigatory detention into an arrest.  Morris, 195 S.W.3d at 745; Nargi v.
State, 895 S.W.2d 820, 822 (Tex. App.CHouston [14th Dist.] 1995), pet. dism=d as improvidently granted, 922 S.W.2d
180, 181 (Tex. Crim. App. 1996).  As
stated above, officers may use such force as is reasonably necessary to effect
the goal of the stop, including handcuffing the defendant.  See Morris, 50 S.W.3d at 95.  Further, reasonableness must not be judged
from the advantage of hindsight, but rather by the perspective of the officer
at the time of the detention.  See
McCraw, 117 S.W.3d at 52.  








A police officer=s belief that a suspect is armed may be predicated on the nature of
the suspected criminal activity.  Morris,
195 S.W.3d at 745.  Because weapons are
closely associated with drug dealing, a reasonable suspicion that a suspect is
dealing drugs supports a reasonable inference that the suspect is armed.  Id.; see Carmouche v. State, 10
S.W.3d 323, 330 (Tex. Crim. App. 2000). 
Investigator Davis testified that he knew that appellant had a lengthy
criminal history and prior weapons charges, and that he knew appellant from
prior drug investigations.  Investigator
Davis stated that the gas station was in an area of high drug activity.  He stated that the confidential informant
told him, and he confirmed before approaching appellant, that appellant would
be at the gas station with Maria Robles. 
The confidential informant also gave Investigator Davis a description of
appellant=s vehicle,
including the license plate number, and that Robles would be with him in a
maroon minivan.  He confirmed these facts
at the gas station.  He stated that the
officers approached appellant because they thought that he had drugs on his
person and was about to leave the location. 
He stated that he did not think that they would be able to follow
appellant because it was a semi-rural area and appellant would most likely get
away.  Investigator Davis testified that
he did not get a warrant before approaching appellant because he did not have
time to get the warrant before appellant left the gas station. Investigator
Davis testified that the police officers approached appellant with their
weapons drawn out of concern for officer safety. While there were no weapons
recovered, I would hold that the totality of circumstances justified the police
officers= actions as reasonably necessary to protect the officers.  








Additionally, Investigator
Davis testified that after handcuffing appellant, an officer patted appellant
down to determine if he had weapons on him. 
Because there is no evidence that appellant was patted down to determine
if he had any weapons on his person before being handcuffed, I would
hold that handcuffing appellant in these circumstances was reasonable and did
not convert the detention into an arrest. 
See Morris, 195 S.W.3d at 746. 
Additionally, Investigator Davis investigated appellant=s possible drug possession. 
But cf. Amores v. State, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991)
(holding detention was an arrest after an officer blocked the defendant=s car, drew his weapon, ordered the defendant out of the car at
gunpoint, ordered him to lie on the pavement, and told him that if he did not
obey he would be shot, when officer did not ask defendant any
questions).  Investigator Davis testified
that he asked appellant if he had methamphetamine, and appellant stated that he
did.

As stated above, the opinion
of the officer does not conclusively determine the nature of the
detention.  See McCraw, 117 S.W.3d
at 52.  The fact that Investigator Davis
stated that appellant was not Afree to leave@ does not
convert the investigative detention into an arrest.  The officer=s statements, when taken together with the other evidence, demonstrate
that appellant was not under arrest when the investigators handcuffed him and
asked him questions.    








Thus, after reviewing
Investigator Davis=s testimony,
I would hold that the investigators used reasonably necessary force when they
blocked appellant=s car in the
parking lot, drew their weapons, placed appellant on the ground, and handcuffed
him.  I believe that the investigators
did not have probable cause to arrest appellant until after appellant
stated that he had methamphetamine in his pocket.  Thus, I would hold that, under the present
facts and circumstances, such force was necessary to safely conduct the
investigation and that the investigative detention did not become an arrest
until after appellant admitted that he possessed methamphetamine and was then
searched.  At that point, it became a
warrantless arrest for an offense committed within the officer=s view.  See Tex. Penal Code Ann. ' 14.01(b) (Vernon 2005).

While the result would remain
the same under my analysis or the majority=s, I respectfully concur based upon the foregoing.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PUBLISH

DELIVERED: August 31, 2006











[1]384 U.S. 436, 86 S. Ct. 1602
(1966).





[2]We note that as support for its
assertion that Akins=s arrest was legal, despite the
fact that the police had not obtained an arrest warrant, the State argues that A[b]ecause officers verified all the
details given by the information except the question of whether the suspect
was carrying drugs, they had reasonable grounds to believe that the
remaining item of unverified information was also true.@ [Emphasis added.]  As further support for the proposition that a
statutory warrant exception applied to the warrantless arrest, the State
asserts that A[b]ased on information provided by
the confidential informant, . . . whose information regarding Appellant was
verified by the officers in every respect save for whether Appellant
actually had drugs on his person, officers had probable cause to arrest
Appellant for a felony offense.@ [Emphasis added.] Hence, the State concedes that Akins=s arrest occurred before the
officer asked Akins whether he had drugs on him.  

 





[3]        [A]round
the turn of the century a Texas law firm had a case in which a white horse
owned by the client=s taxi service reared in the
street, causing an elderly woman to fall and injure herself.  The partner handling the case asked a young
associate to find a case on point.  The
associate came back several hours later with a case involving an elderly lady
who had fallen in the street after a taxi company=s black horse had reared in front
of her.  When the associate took this
case to the partner, the partner said, ANice try, son. Now go find me a white horse case.@  


 

Hilland v. Arnold, 856 S.W.2d 240, 242 n.1 (Tex. App.CTexarkana 1993, no writ).

 





[4]In its brief, the State does not
claim that the investigator=s question was not interrogation.  Therefore, we will not address that
issue.  





[5]In
his brief, Akins does not contend that his statement regarding his possession
of methamphetamine was obtained through coercive means, only that the statement
was obtained as the result of the unwarned custodial interrogation.  

 





[6]Appellant addresses only a probable
cause argument in his brief.  The State addresses
both probable cause and reasonable suspicion in its brief.















 [COMMENT1]

MAJORITY BY JUSTICE MCCOY CONCURRENCE BY JUSTICE LIVINGSTON